762 A.2d 246 (2000)
335 N.J. Super. 212
Peter MARTIN, Plaintiff-Respondent,
v.
Elissa MARTIN, Defendant-Respondent.
Appeal of Louis J. Cirrilla, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 2000.
Decided November 28, 2000.
*247 Richard J. Allen, Jr., Rutherford, argued the cause for appellant.
*248 John E. Selser, Hackensack, respondent, argued the cause pro se and for respondent Aronsohn Weiner, P.C. (Mr. Selser, on the brief).
Respondent Peter Martin filed a pro se brief.
No other party has filed a brief.
Before Judges KESTIN, CIANCIA and ALLEY.
The opinion of the court was delivered by CIANCIA, J.A.D.
This appeal presents questions concerning the proper establishment and application of attorneys' charging liens when a client, who has been represented by more than one attorney, apparently does not have assets sufficient to satisfy all fee claims. The underlying litigation was a divorce action between plaintiff Peter Martin and defendant Elissa Martin. Appellant is Louis J. Cirrilla, Esq., who at one time represented plaintiff and who has not received payment for his services.
The appellate record in this matter is sparse and many factual allegations are presented without citation or supporting documentation. See R. 2:6-2(a). We believe the following recitation to be accurate. Peter Martin was initially represented by Cirrilla when Cirrilla was employed with the law firm of Aronsohn Weiner, P.C. (AW). Cirrilla left the firm in September 1994 and plaintiff continued to be represented by AW. In March 1995, Cirrilla substituted in for AW and once again became plaintiff's attorney. At that time, AW apparently sought a court order memorializing a charging lien pursuant to N.J.S.A. 2A:13-5. Although the pleadings in support of that application are not provided to us and we do not know if a hearing was held, on March 8, 1995 a Family Part judge entered an "order for charging lien" that reads as follows:
A. The law firm of Aronsohn & Weiner, Esqs., is hereby granted a charging lien in the sum of $22,132.20, to be impressed and affixed upon all property, both real and personal which may accrue to the plaintiff Peter Martin, including proceeds from the sale of Wyckoff, New Jersey, real property, originally owned by the parties, and held in escrow by Robert Y. Gray, Esq., 824 Garrison Avenue, Teaneck, New Jersey, real premises owned by the parties located at 26 Bergen Street, Englewood, New Jersey, commonly known and designated as Block 1208, Lot 22; real premises located at 107 Ivy Lane, River Vale, New Jersey, commonly known and designated as Block 2106, Lot 26.01; 173 Rivervale Road, River Vale, New Jersey, commonly known and designated as Block 2206, Lot 43, on the respective tax maps of those communities, and all proceeds arising from such property and substitutions thereof, and any time whatsoever, wherever situate, which accrue to the Plaintiff, Peter Martin, at any time, by way of the assertion of claims by the Plaintiff in the matter of Peter Martin v. Elissa Martin, the Swimming Pool Co., Inc., United Jersey Bank, and Citizens First National Bank of New Jersey, presently pending under Docket No. FM XX-XXX-XX, in the Superior Court of New Jersey, Chancery Division, Bergen County.
B. This lien is without prejudice to the Plaintiff's right to arbitrate fees pursuant to the Rules of Court and any other rights at law or equity which he may have in connection with the fees alleged to be due and owing.
C. The law firm of Aronsohn & Weiner, Esqs., be and they are hereby directed to turn over the file of the Plaintiff, Peter Martin, now in their possession, to the Plaintiff, Peter Martin, or to any counsel he may direct, forthwith, upon service of a copy of this Order.
In May 1996 John Selser substituted in for Cirrilla. An "order relieving counsel for plaintiff and establishing an attorney's lien" was entered by a second judge in *249 favor of Cirrilla on May 10, 1996, although again we do not know what papers or proceedings preceded that order. The language of the order was virtually identical to the order issued to AW, except that Cirrilla's lien was in the amount of $29, 147.50.
Although the Cirrilla order does not indicate whether plaintiff was apprised of his right to fee arbitration, the pro se letter brief filed by plaintiff on this appeal states in part:
The court should know that Mr. Cirrilla advised me of my right to fee arbitration on more than one occasion. We discussed it, he wrote me about [it] and it was part of the motion he filed to get his lien. Before letting Mr. Cirrilla out of the case, [the judge] asked me if I understood the proceeding and asked if I had any comments or objections. For the record, I had no problem with Mr. Cirrilla's bills, other than the fact that I did not have the money to pay them. It was and still is my belief that he did everything that he could to properly represent my interests and he deserved to be paid.
The case was tried to conclusion by Selser before yet a third judge. It appears Cirrilla may have assisted Selser in some manner, the extent of which is disputed. Resolution of that disagreement is not necessary for purposes of this decision. It does not appear that Selser ever applied for or received an order memorializing any claim he might have had pursuant to N.J.S.A. 2A:13-5.
On July 14, 1997, the trial judge gave his oral opinion in the matrimonial litigation. Selser was present in the courtroom and entered his appearance on behalf of plaintiff. An attorney from AW was also apparently present, but the transcript of the opinion does not indicate an appearance. Plaintiff's pro se appellate brief asserts that Mr. Weiner was present at some point, apparently during trial, and "was allowed to make his argument between witnesses in the middle of the case" concerning attorney's fees. We have not been provided with a transcript of any proceedings that may have been conducted prior to the court's oral opinion.
Although the details are in dispute, Cirrilla apparently learned a few days in advance that the opinion in Martin v. Martin would be given from the bench on July 14, 1997. He was in the courtroom for at least part of the decision, but sat in the visitor's section of the courtroom and did not participate in the proceedings.
The trial judge's opinion was primarily devoted to all the usual elements of a divorce action. One of the marital assets was the "Gray account," which consisted of a sum of money, at one time approximately $132,000, realized from the sale of real property and held in escrow by an attorney named Gray. There had been a prior distribution from the Gray account in the amount of $75,000. At the time of the trial judge's opinion the balance was $57,000, although that number was adjusted to $58,100 in the final judgment. It is this fund that is the focus of the present dispute because it appears other assets have not been available to satisfy Cirrilla's claim for unpaid counsel fees.
In the course of his opinion, the trial judge stated:
The Grey [sic] account. The Grey account plus the cash on hand held by Mrs. Martin totals $57,000.00. I direct that if Mr. Grey is entitled to a fee, he shall be paid from the $50,000.00 [sic] fund not to exceed $2,000.00. That leaves $55,000.00 left. That isI find that to be a fifty fifty asset. It will be divided equally between the parties. Mrs. Martin shall receive $27,500.00, Mr. Martin shall receive twenty thousand $27,500.00. $22,132.00 shall be held in escrow by Mr. Grey pending the outcome of the fee arbitration dispute with Aronsohn and Weiner over its lien. $5,468.00 shall be released to Mr. Selser on account of his fees or expert fees. I *250 will leave it up to him to decide how to divide that money.
In the event that the Aronsohn and Weiner claim is reduced at fee arbitration or settled or otherwise resolved for less than the full amount, then the difference shall also be paid to Mr. Selser for his fees or the fees of experts again to be distributed in accordance with his discretion.
The previous distribution of $75,000.00 from the Grey fund, that is $50,000.00 to Mrs. Martin and $25,000.00 to Mr. Martin is hereby allocated as follows. $25,000.00 to defendant, $25,000.00 to plaintiff and $25,000.00 to defendant towards plaintiff's obligation to pay part of defendant's counsel fees. Any further counsel fee award and the court's findings on that issue will be made upon a subsequent application by [defendant's attorney].
There was no reference to Cirrilla's prior order that purported to grant him a charging lien.
On July 15, 1997, the day after the opinion was rendered, Cirrilla wrote to the trial judge, copies to other attorneys in the litigation, to plaintiff and to Gray, reminding the judge that Cirrilla's charging lien had not been addressed by the court. Cirrilla acknowledged he was in the courtroom when the opinion was delivered, but it was only later that he found out "that the Aronsohn firm was afforded an opportunity to be heard with regard to their lien." The letter asserted that neither court nor counsel had notified him that trial was coming to a close. He had not been provided with an opportunity to be heard on his lien. Cirrilla concluded:
I respectfully request an opportunity to be heard on this matter. My request will not effect the distribution of assets between the parties. My request will be that the Court to honor my Charging Lien, and impose a lien on the balance of funds due to Mr. Martin from the "Gray account," including any monies which may remain, after any fee arbitration which may take place between Mr. Martin and the firm of Aronsohn and Weiner. Cirrilla alleges that on July 18, 1997, he stopped in at the trial judge's chambers to confirm receipt of his letter and was told a phone conference was tentatively set for August 11 at 5:30 p.m. to discuss the matters raised in his letter. On July 31, 1997, Cirrilla again wrote the trial judge stating he was in possession of a proposed dual-judgment of divorce and requesting the opportunity to be heard on his lien prior to entry of that judgment. A conference call apparently took place sometime between August 11, 1997 and August 27, 1997. The issues, however, were not resolved and Cirrilla filed a motion to intervene and be heard regarding his lien. While that motion was pending, on September 3, 1997, the court entered the dual-judgment of divorce. A handwritten paragraph added under the judge's signature states:
The charging lien previously granted to Louis Cirrilla, Esq. by pendente lite order dated May 10, 1996 is hereby imposed upon Plaintiff's account receivable due from Joan Katz in the amount of $24,000.00. The charging lien is hereby removed from any assets awarded to Defendant, as well as the present balance in the "Gray" trust account.
Cirrilla's motion was heard and denied on October 10, 1997. The trial judge thought Cirrilla had not acted diligently and at that point the judge believed he could not redirect the money in the Gray account. He imposed Cirrilla's lien on "$3,000.00 coming out of the boat," apparently plaintiff's anticipated share from the sale of a boat, and offered Cirrilla a lien on plaintiff's interest in a swimming pool company. In a letter opinion written by the trial judge to this court to "supplement the record" after Cirrilla had filed his notice of appeal, see R. 2:5-1(b), the trial judge gave his view of the history of the case and made clear that he had "relied upon the doctrine of laches" in denying Cirrilla's application.
*251 Plaintiff Martin subsequently went into Chapter 7 bankruptcy and was discharged on March 22, 1999. A debt of $19,786.02 "for attorney's fees owed Aronsohn & Weiner ... attn: John Selser, Esq." was listed.[1] A debt of $29,147.50 for attorney's fees was listed for Louis J. Cirrilla, Esq. Very little additional information is provided us concerning plaintiff's bankruptcy. At some point, apparently prior to plaintiff's bankruptcy, AW settled its fee dispute with plaintiff "for a lesser sum" and the balance of the funds in the Gray account were paid to Selser in satisfaction, or partial satisfaction, of his fee claims. Although not entirely clear, the Gray account money used to pay AW and Selser amounted to somewhere between $22,000 and $28,000. The discrepancy apparently centers on an award to Selser of $5,468, "on account of his fees or expert fees."
Cirrilla now appeals from that portion of the final judgment of divorce that removed his lien from the Gray account and also from the denial of his post-judgment motion seeking reimposition of the lien on that fund. The "assets" on which Cirrilla's lien was imposed are assertedly worthless. Cirrilla contends his lien was improperly ignored by the trial judge when the oral decision was rendered and that his motion to rectify that oversight was improperly denied. We find considerable merit in the arguments presented by Cirrilla, although our concern about the proceedings in this matrimonial litigation is significantly broader than the issues raised by appellant.
An attorney's "special" or "charging" lien has mystified bench and bar at least since its codification from the common law in 1914. L. 1914, c. 201, § 1; R.S. 2:20-7 (repealed); currently N.J.S.A. 2A:13-5. What the statute does, what an attorney must do and when, whether and how the modern rules of practice impact required procedures under the statute, and what priorities exist among competing liens are just some of the questions that have been debated over the years, with relative degrees of clarity and resolution. As recently as 1998, the Federal District Court, in reviewing an appeal from the bankruptcy court, noted that although lien perfection is determined by state law in federal bankruptcy, the New Jersey Supreme Court "has not decided the point at which the statutory attorney's lien is perfected under § 2A:13-5." Hoffman & Schreiber v. Medina, 224 B.R. 556, 561 (D.N.J.1998).
The attorney's lien act, as it now reads, is not significantly different from the version initially enacted in 1914. The bulk of the alterations between the original version and the current version were made in 1952 when Title 2 was revised as Title 2A following enactment of our current Constitution.
N.J.S.A. 2A:13-5 now reads:
After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.
The statute embodies the so-called charging lien that existed at common law, but it also expands the common law lien which had attached only to a judgment. Norrell *252 v. Chasan, 125 N.J.Eq. 230, 236-237, 4 A.2d 88 (E. & A.1939).
The lien is rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts. It is intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered. Republic Factors, Inc. v. Carteret Work Uniforms, 24 N.J. 525, 534, 133 A.2d 6 (1957); Norrell, supra, 125 N.J.Eq. at 235-236, 4 A.2d 88. Since the earliest days of the statute, though, courts have cautioned against use of the remedy in a summary fashion. See, e.g., Levy v. Public Service Ry. Co., 91 N.J.L. 183, 186, 103 A. 171 (E. & A.1918) ("[T]he language of the statute will be searched in vain for any expression of a legislative intent that the value of such services shall be determined in a summary proceeding").
The procedures to be followed in effectuating the statute are rooted in dicta set forth in Artale v. Columbia Insurance Co., 109 N.J.L. 463, 467-468, 162 A. 585 (E. & A.1932), and more recently endorsed in H. & H. Ranch Homes, Inc. v. Frank H. Smith, 54 N.J.Super. 347, 148 A.2d 837 (App.Div.1959). In H. & H. Ranch Homes, Justice, then Judge, Haneman stated:
For the guidance of counsel in connection with future applications, consistent with the spirit of our present rules of practice, we suggest that, where the determination or enforcement of an attorney's lien is sought, the following procedure, patterned on Artale, be employed: The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor has been made, R.R. 4:39-1 et seq., or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.

[Id. at 353-354, 148 A.2d 837.]
This procedure remains in place today subject to certain necessary modifications, such as are required by our fee arbitration rules. R. 1:20A. See Shalit v. Shalit, 323 N.J.Super. 351, 355, 732 A.2d 1152 (Ch. Div.1999); Rosenfeld v. Rosenfeld, 239 N.J.Super. 77, 80, 570 A.2d 1026 (Ch.Div. 1989). Thus it has been held that simply moving for an attorney's lien pursuant to N.J.S.A. 2A:13-5, as distinguished from filing a complaint demanding a fee, is not the proper way to establish an attorney's lien. Mateo v. Mateo, 281 N.J.Super. 73, 79, 656 A.2d 846 (App.Div.1995). In that decision Judge Brody, citing to H. & H. Ranch Homes, supra, again emphasized that these matters cannot be tried in a summary proceeding.
Accordingly, our first concern in the present litigation is the nature and consequences of the orders received by AW and Cirrilla as they were withdrawing from the litigation, which orders on their face purport to establish charging liens in specific amounts and on specific property, if that property "accrues" to the former client, plaintiff Peter Martin. We have virtually no information as to what pleadings, if any, preceded these orders, who was noticed, and whether any form of hearing was held. To the extent these orders were thought to establish a lien *253 pursuant to N.J.S.A. 2A:13-5, it appears they did not. The procedures required by H. & H. Ranch Homes were never followed, as best we can ascertain. Moreover, the orders were premature because no judgment had yet been entered. The statute itself creates a right to a lien upon the action, claim, etc. That lien can only attach to a judgment, order, or other final disposition. At best then, the orders served as notice that the attorneys intended to claim the lien at the appropriate time and in the appropriate way. The statute itself puts parties on notice that a lien may be claimed, Artale, supra, 109 N.J.L. at 467, 162 A. 585, but in the context of a withdrawing attorney who is handing over a file to a client or a substituting attorney, and thereby relinquishing his common law "general" or "retaining" lien, we can understand why additional, specific notice of the intent to rely on N.J.S.A. 2A:13-5 is sensible and warranted. Such notice, however, should be just that and should not take the form of an order purporting to establish the lien. A letter to the client, court, and substituting counsel would suffice as would properly worded language on or attached to the written substitution of attorney. The notice should be as specific as possible. It should set out the intent to rely upon N.J.S.A. 2A:13-5, the amount of fees being sought, the retainer agreement with the client, and the basis of the fee calculation. It is at this point that pre-action notice, pursuant to R. 1:20A-6, should be given to the former client so that if arbitration is requested it can be initiated expeditiously.[2]
We turn now to the specific problem raised by Cirrilla. Once successive attorneys, each having represented the same client, are faced with the prospect of a limited pool of assets that may not satisfy all the fees that may reasonably be assessed, the question arises as to the proper procedure under N.J.S.A. 2A:13-5. Clearly, it is not allowing one of the firms, here AW, to stand up and argue in favor of its lien or of specific assets, prior to a decision on the merits of the litigation. Nor does the proper procedure allow consideration of some but not all of the attorneys' claims. We are also satisfied that the division and assignment of assets, if it need be done at all, must be accomplished only in the context of a proper application by counsel pursuant to the procedures set forth in H. & H. Ranch, supra.
We pause to note that those procedures, for the most part, are established to protect the client. Under the proper circumstances, we think a client might waive some or all of those procedural protections. Such a situation might occur when a client does not contest the fees charged by the respective attorneys who provided representation and acknowledges that the viable assets awarded in the judgment are insufficient to meet the total obligation. In the first instance, however, one or more of the claiming attorneys should initiate an action for fees on notice to the client and all other attorneys claiming or potentially claiming rights to fee awards. That action is to be brought as a "step in the main cause," although, as necessary, it is to be tried as a "separate and distinct plenary action." Mateo, supra, 281 N.J.Super. at 79, 656 A.2d 846. The application should be made at the close of the litigation but prior to the entry of final judgment. Notice must also be given of the right to fee arbitration pursuant to R. 1:20A-6 if it has not previously been given. See Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens, 292 N.J.Super. 453, 457-459, 679 A.2d 155 (App.Div.1996). If there is a request for fee arbitration, that arbitration proceeding will determine the amount properly owed counsel and thus the maximum amount of any lien imposed pursuant to N.J.S.A. 2A:13-5. See Horowitz v. Weishoff, 318 *254 N.J.Super. 196, 723 A.2d 121 (App.Div. 1999). The arbitration process need not delay entry of a final judgment for the litigants. As necessary, the trial judge may restrain or place in escrow those assets on which an attorney's lien might be imposed. Steiger v. Armellino, 315 N.J.Super. 176, 716 A.2d 1216 (Ch.Div. 1998). The extent of that restraint or escrow should not be more than reasonably necessary to satisfy the total anticipated lien or liens.
Under the statute, the lien attaches to the judgment, decision, award, etc., in gross, not to specific assets. If it becomes necessary to allocate assets between or among attorneys who have otherwise established entitlement to a charging lien, then this must be done as equitably as possible. In our view, no attorney in this circumstance is entitled to a priority. Each stands on equal footing. We believe a pro rata distribution is appropriate. Thus, if one attorney's bill represents twenty-five percent of all the attorney fees properly due, owing and unpaid, then that attorney is entitled to a charging lien on twenty-five percent of the viable assets in the judgment awarded the client. The trial judge must scrupulously evaluate the nature of each asset in the judgment. A promissory note that may not be paid cannot be placed in the same category as a fund in existence. If the sale of property is contemplated, the likelihood of sale and the probable money it will realize must be carefully assessed. While much of this will never be an exact science, nevertheless, a court must make every effort to treat the claiming attorneys evenhandedly so that none is preferred over the others.
The question remains how to correct the circumstances in the present case in light of all that has transpired. It is apparent that none of the attorneys who represented plaintiff in this divorce action properly petitioned the courts pursuant to N.J.S.A. 2A:13-5. Nevertheless, liens were assigned to specific assets, including the Gray account. The so-called assets that Cirrilla eventually was given a lien on, apparently, are not actually available to satisfy his unpaid fees. Cirrilla described those assets as "worthless" and nothing in the record contradicts that characterization. In light of all that has transpired in this matter, including plaintiff's settlement of his fee dispute with AW, the distribution of money from the Gray account, and plaintiff's subsequent bankruptcy, we cannot restore the status of this litigation to a point where any lien petitions are appropriate. Nevertheless, Cirrilla stands as one denied access to a fund that was inappropriately made available only to the other two attorneys. As an equitable matter, nothing Cirrilla did or failed to do warranted his exclusion from the only viable source of funds available to pay legitimate attorneys' fees. Cirrilla's failure to interrupt the trial court's oral recitation of its decision, to argue in favor of a charging lien, was not only understandable but in fact legally correct in the sense that such a mode of application was not appropriate. His next-day letter to the court, in our view, belies any finding that Cirrilla was somehow guilty of laches as the trial judge concluded. We assume from plaintiff's pro se brief on appeal that he does not dispute the reasonableness of Cirrilla's fees. Therefore, at this point, the most equitable remedy is to require that Gray account money paid out to satisfy the fees of AW or Selser, now be made available from those attorneys so that Cirrilla may receive his pro rata share of those funds.
The orders appealed from, which denied Cirrilla's requests for the imposition of a statutory lien on funds in the Gray account, are moot and accordingly are vacated. The matter is remanded for proceedings consistent with this opinion.
Vacated and remanded.
NOTES
[1] At some point, perhaps November 1997, Selser joined the firm of Aronsohn Weiner.
[2] We recommend consideration of these procedures, as well as others suggested in this opinion, by the Supreme Court's Civil Practice Committee. There may well be concerns or factors not evident to us in the context of this appeal.