884 A.2d 222 (2005)
381 N.J. Super. 1
Debra D. LEVINE, Plaintiff,
v.
Michael B. LEVINE, Defendant.
Richard M. Belson, Esq., Petitioner-Appellant,
v.
Debra D. Levine, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 2005.
Decided October 14, 2005.
*223 Richard M. Belson, Basking Ridge, argued the cause pro se.
Steven M. Resnick, Short Hills, argued the cause for respondent (Budd Larner, attorney; Mr. Resnick and Christina M. Reger, on the brief).
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered
SKILLMAN, P.J.A.D.
This appeal involves the right of an attorney in a matrimonial action to petition for a charging lien on the client's assets and the procedures to be followed in adjudicating such a petition.
Petitioner Richard M. Belson was the attorney for respondent Debra D. Levine in a matrimonial action she brought against her husband Michael B. Levine. The case was tried over a period of nineteen days beginning in August 2001 and ending in December 2002.[1]
One of the disputed issues was respondent's claim for an award of counsel fees against her husband. She sought a total counsel fee award of $388,937.90, of which $365,626.25 constituted Belson's billings and another $23,311.65 the billings of a "backup" attorney retained by respondent during Belson's illness. Although Belson requested a plenary hearing on respondent's claim for counsel fees against her husband,[2] the court denied the request, deciding the issue solely on the basis of certifications and arguments of counsel.
On June 23, 2003, the trial court issued an oral opinion deciding all issues in the matrimonial action. Regarding counsel fees, the court awarded plaintiff $52,500 to be paid by her husband. In making this award, the court noted that the billing for *224 the legal services provided by respondent's husband were $104,471.25, which was less than one-third the amount Belson had billed to respondent. The court found that Belson had overlitigated the case and that his billings to plaintiff and those of the back-up attorney were excessive:
This Court finds that all in all, the Levine case presented a routine matrimonial matter in which the parties stake out their respective differing positions based upon readily discernible and available economic data.
This Court further finds that from the outset of this litigation, Mr. Belson engaged in a course of conduct specifically designed to protract the litigation in a manner calculated to engender legal fees. It is fair to find that Plaintiff's counsel's focus during the pendente lite period and throughout the trial was centered upon an award of legal fees.
The court concluded that the reasonable and necessary fees for handling the matrimonial action on respondent's behalf were $105,000, half of which should be paid by respondent's husband:
I find the statement of services rendered by [husband's attorney] of $104,471.25 is reasonable and necessary and fairly representative of fees incurred in cases of similar complexity.
Moreover, as I have found that Mr. Levine is in a superior financial position than Mrs. Levine, he should be responsible for one-half of Mrs. Levine's reasonable and necessary legal fees. This Court finds that Mrs. Levine's reasonable and necessary legal fees are $105,000.00. Accordingly, Mr. Levine is responsible for $52,500 of Mrs. Levine's legal fees....
The court also concluded that Belson's conduct in representing respondent warranted referral to the local ethics committees:
In this litigation, the Plaintiff's counsel has doggedly sought to convert the Levine trial into a hearing on his legal fees.... Plaintiff's counsel's billing practices sadly offend the conscience of the Court. They are neither reasonable or necessary. And the ethos of the Court cannot countenance such conduct.
Accordingly, and mindful not only of the Levine family's concerns, but the interest of society as a whole, this Court is impelled to refer the matter to the secretaries of The District 13 and District 10 Ethics Committees, with direction that they fully investigate the matter.[3]
The trial court entered the judgment of divorce on the same day it issued its oral opinion. Both parties subsequently filed motions for reconsideration, which were denied on August 23, 2003. Neither party appealed from the judgment of divorce or denial of reconsideration.
On July 23, 2003, Belson sent respondent a $307,592.99 bill for unpaid legal services. This bill included $45,333 for legal services and costs incurred since April 1, 2003, the date as of which Belson calculated the fees set forth in his certification in support of respondent's application for counsel fees in the matrimonial action.
On August 1, 2003, respondent sent Belson a letter declining to pay him any counsel fees in addition to the $105,000 the trial court had found to be "reasonable and necessary."
*225 On August 19, 2003, Belson sent respondent a letter informing her that the trial court had not made any determination regarding her contractual obligation to pay his fees and costs. This letter stated: "If you and I cannot agree on the total counsel fees involved in this entire matter, then that issue would have to be separately adjudicated either in a Fee Arbitration Hearing such as you have made reference to, or otherwise in court in a separate action." Belson's letter also stated: "[W]hile I can, and will, vigorously defend the righteousness of the fees charged to you and which were never objected to or adversely commented on until August 1, 2003, I am willing to discuss a fair compromise in the interests of finality and the avoidance of even further such litigation, and its attendant time and expense to myself, as well as to you."
Respondent apparently refused to discuss a reduction of Belson's counsel fee claim, and on September 16, 2003, Belson sent respondent a letter informing her that he intended to file suit for the amount she owed him. As required by Rule 1:20A-6, Belson's letter notified respondent of her right to pursue fee arbitration and provided her with the name and address of the secretary to the district fee arbitration committee. Belson's letter closed by stating: "Unless you demand arbitration in 30 days of receipt of this letter, suit will be instituted; and you will no longer have the right to have fee arbitration regarding this bill."
Sometime thereafter, respondent submitted a fee arbitration request to the district committee. However, the committee declined to consider the matter on the ground that the trial court had already made a binding determination that respondent was only obligated to pay Belson the $105,000 that the court had determined to be reasonable and necessary:[4]
Rule 1:20A-2(c)(1) provides the Fee Committee should not have jurisdiction to decide "a fee which is allowed or allowable as a right by a court or agency pursuant to any applicable rule or statute." In this case, Judge Armstrong has already reviewed Mr. Belson's submittal and has determined that a total fee of $105,000.00 is an appropriate fee. Although I understand Mr. Belson takes the position that the Judge was not making a determination as to the fee as between you and he, a review of his opinion which you also provided makes it clear that he has determined that a total fee due would be the $105,000.00, of which Mr. Levine would pay one half and you would pay one half.
Belson alleges that he did not receive either respondent's request for fee arbitration or the fee committee's response until respondent submitted those documents to the trial court as exhibits several months later.
On October 1, 2003, Belson filed a petition in the underlying matrimonial action for "the determination and fixing of an attorney's charging lien" for his unpaid legal fees and costs, which by that time totaled $310,770. The petition sought entry of an order setting a date for a plenary hearing.
The trial court refused to either impose a charging lien upon respondent's assets or *226 schedule a plenary hearing. The court concluded that Belson should instead pursue what the court characterized as "the usual procedure" of filing a separate action to collect the unpaid legal fees he claimed to be owed by respondent. Accordingly, the court entered an order dismissing Belson's petition.
Belson filed a motion for reconsideration.[5] Before this motion was ruled upon, Belson filed a notice of appeal from the order dismissing his petition, which divested the trial court of jurisdiction. We subsequently remanded the case to afford the trial court an opportunity to consider the motion. By opinion dated March 19, 2004, the trial court reaffirmed its prior decision and denied Belson's motion for reconsideration.
Initially, we note that Belson does not argue that he is entitled to a charging lien on respondent's assets in advance of a plenary hearing. We also note that the parties agree Belson is entitled to a plenary hearing on his fee claim against respondent. See Rosenberg v. Rosenberg, 286 N.J.Super. 58, 63-69, 668 A.2d 84 (App.Div.1995)(holding that adjudication of reasonableness of attorneys' fee on application for attorney's fee award against other party to matrimonial action is not binding in suit by an attorney against client for attorney's fees); see also Gruhin & Gruhin, P.A. v. Brown, 338 N.J.Super. 276, 280-81, 768 A.2d 822 (App.Div.2001). However, respondent argues that the sole avenue for adjudication of Belson's fee claim is a separate action in the Law Division. Belson argues that he is entitled to a "prompt plenary hearing... within the aegis of the main divorce action" on his petition under N.J.S.A. 2A:13-5. Thus, the only issue is whether Belson must file a separate action in the Law Division for the recovery of his counsel fees or is entitled to a plenary hearing in the trial court on his petition for a charging lien.
N.J.S.A. 2A:13-5, commonly known as the Attorney's Lien Act, provides:
After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counselor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counselor at law, may determine and enforce the lien.
The lien provided by this statute "is intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." Martin v. Martin, 335 N.J.Super. 212, 222, 762 A.2d 246 (App.Div.2000). The lien is "rooted in equitable *227 considerations, and its enforcement is within the equitable jurisdiction of the courts." Musikoff v. Jay Parrino's The Mint, L.L.C., 172 N.J. 133, 142, 796 A.2d 866 (2002) (quoting Martin, supra, 335 N.J.Super. at 222, 762 A.2d 246).
A petition for an attorney's fee lien may be filed either before or after entry of the judgment in the underlying action. Id. at 146, 796 A.2d 866. The petition should be filed "as a `step in the main cause,' although ... it is to be tried as a `separate and distinct plenary action.'" Martin, supra, 335 N.J.Super. at 225, 762 A.2d 246 (quoting Mateo v. Mateo, 281 N.J.Super. 73, 79, 656 A.2d 846 (App.Div.1995)). "As necessary, the trial judge may restrain or place in escrow those assets on which an attorney's lien might be imposed." Ibid.; see also Steiger v. Armellino, 315 N.J.Super. 176, 182-84, 716 A.2d 1216 (Ch.Div.1998). However, the lien may be asserted even after the proceeds of the underlying action have been disbursed. Musikoff, supra, 172 N.J. at 143, 796 A.2d 866.
The following procedures govern the filing and hearing of a petition for an attorney's lien under N.J.S.A. 2A:13-5:
The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor has been made. R.R. 4:39-1 et seq., or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.
[H & H Ranch Homes, Inc. v. Smith, 54 N.J.Super. 347, 353-54, 148 A.2d 837 (App.Div.1959).]
See Musikoff, supra, 172 N.J. at 145, 796 A.2d 866; Martin, supra, 335 N.J.Super. at 222-23, 762 A.2d 246.
N.J.S.A. 2A:13-5 does not authorize a trial court to dismiss a petition for an attorney's lien based on its preliminary view, derived from the evidence presented in the underlying action, that the fees claimed by the attorney are excessive. Such a preliminary view may well warrant either the denial or limitation of any ad interim relief pending a plenary hearing. See Martin, supra, 335 N.J.Super. at 225, 762 A.2d 246 (noting that the amount of any ad interim restraint or escrow "should not be more than reasonably necessary to satisfy the total anticipated lien or liens"). However, a court's preliminary view of the merits of an attorney's fee claim does not provide a basis for a summary dismissal of the petition without a hearing. Although the determination whether to recognize and enforce an attorney's lien is within the equitable jurisdiction of the court, this determination must be based on the evidence presented at a plenary hearing, rather than the court's findings on an application for an award of counsel fees against the opposing party in the underlying action, to which the attorney was not a party.
*228 We also note that the disposition of a fee dispute between attorney and client under N.J.S.A. 2A:13-5 may serve the interests of judicial economy and efficiency by placing the dispute before the same judge who presided over the underlying action, rather than requiring another judge to review a trial record with which that judge has no prior familiarity. See Salch v. Salch, 240 N.J.Super. 441, 444-45, 573 A.2d 520 (App.Div.1990). This mode of disposition also enables the attorney and client to resolve their fee dispute more expeditiously than by a separate action in the Law Division.[6]
The trial court gave three reasons for dismissing Belson's petition for a charging lien. First, the court stated that Martin and Mateo required the filing of a separate action for counsel fees. However, those cases only hold that an attorney may not move in a summary manner for an attorney's lien but must instead file a separate complaint or petition in the underlying action in accordance with the procedures set forth in H & H Ranch Homes. See Martin, supra, 335 N.J.Super. at 223, 762 A.2d 246; Mateo, supra, 281 N.J.Super. at 79, 656 A.2d 846. Belson followed those procedures by filing a separate petition for his fees and requesting the court to schedule a plenary hearing.
Second, the court quoted a statement in Martin that "[s]ince the earliest days of the statute ... courts have cautioned against use of the remedy in a summary fashion[,]" 335 N.J.Super. at 222, 762 A.2d 246, and also observed that there is "no indication [respondent] will not pay or have the ability to pay what is ultimately ordered to be paid." However, Belson does not seek to have his fee claim adjudicated in a summary fashion; his petition expressly recognized that there must be a plenary hearing. Moreover, an attorney petitioning for a charging lien under N.J.S.A. 2A:13-5 is not required to make a preliminary showing of the client's inability to pay the fee.
Third, the trial court quoted the findings in the matrimonial action (which was presided over by a different judge) regarding the excessiveness of Belson's fees, and concluded that, in light of those findings, it would be inequitable and unjust to impose a lien upon respondent's assets in the full amount of Belson's fee claim. However, this reason for dismissal of Belson's petition conflates Belson's right to a plenary hearing with his right to ad interim restraints pending a plenary hearing. As previously noted, Belson does not seek ad interim restraints. He only seeks a prompt plenary hearing to establish the amount of counsel fees to which he is entitled. For the reasons previously set forth, N.J.S.A. 2A:13-5 gives an attorney a right to such a hearing.
Belson argues that on remand, venue to hear his petition should be transferred to another county. However, Belson did not move before the trial court for a change of venue. See R. 4:3-3(a) (requiring such a motion to be heard by the Assignment Judge or his or her designee or the Presiding Judge of the Family Part). Therefore, there is no trial court order denying a change of venue and for that reason the issue is not properly before us. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Finally, we comment briefly concerning the proceedings upon remand. We recognize that the trial court found during the *229 course of the matrimonial action that Belson's fees were excessive. However, this finding was based solely upon certifications as well as the trial court's familiarity with the pretrial motions and trial proceedings in that action. The plenary hearing required on a petition for an attorney's charging lien under N.J.S.A. 2A:13-5 will afford both Belson and respondent an opportunity to supplement the trial record to show the reasonableness or unreasonableness of the particular legal services Belson performed. Belson may be able to show, for example, that respondent encouraged him to file pretrial motions or present trial evidence that the trial court concluded was unnecessary or repetitive. A plenary hearing also will afford Belson an opportunity to explain considerations of trial strategy or other aspects of his legal work that may not have been evident on the face of the trial record or the certifications submitted in support of the counsel fee application in the matrimonial action. Despite the findings in the matrimonial action, the trial court has an obligation to make a new determination regarding the reasonableness of Belson's fees based on the complete record presented at the plenary hearing.[7]See Rosenberg, supra, 286 N.J.Super. at 63-69, 668 A.2d 84. The court's responsibility at this hearing will be similar to that of a Chancery Division judge who has made factual findings and legal conclusions on an application for a preliminary injunction and then presides over the trial on the merits of the action. The judge's obligation is to put aside whatever views he or she may have expressed based on a summary presentation of evidence and decide the matter anew, based on all the evidence presented at the plenary hearing.
Accordingly, the order dismissing Belson's petition for a charging lien is reversed and the case is remanded to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] There was a ten-month hiatus in the trial due to Belson's illness.
[2] This request was made during the trial and was reiterated in a letter from Belson to the court between the end of the trial and issuance of the trial court's opinion. The court reaffirmed its denial of the request by a letter dated May 8, 2003.
[3] We were advised at oral argument that the ethics committees' practice is to defer consideration of any referral related to a fee dispute that is a subject of pending litigation, see R. 1:20-3(e)(2)(D); R. 1:20-3(f), and consistent with that practice, the trial court's referrals to the committees are being held in abeyance pending a final decision on this appeal.
[4] As discussed later in this opinion, the committee's view that the trial court's finding in the matrimonial action is binding upon Belson is incorrect. At oral argument, respondent's counsel advised us that the district fee arbitration committee would not have considered the matter in any event because the disputed legal fee exceeds $100,000. See R. 1:20A-2, which confers discretion upon a fee committee to decline arbitration of a fee dispute if the total fee charged exceeds that sum.
[5] Belson also sent a letter to the secretary of the district fee arbitration committee indicating that the committee had erred in concluding that the trial court's comments regarding the excessiveness of his fee were dispositive of his contractual claim against respondent and a letter to respondent's new counsel inquiring whether respondent was still amenable to submission of the fee dispute to arbitration. The record does not indicate whether there were responses to either of those letters.
[6] Because the fee dispute in this case arises out of an action in the Chancery Division, there is no right to a jury trial. See H & H Ranch Homes, supra, 54 N.J.Super. at 354, 148 A.2d 837. Therefore, we do not consider the issues that may be presented if a party seeks a jury trial regarding a counsel fee dispute.
[7] Although it is ordinarily preferable for the judge who presided over the underlying action also to decide any fee dispute between the attorney and client because of that judge's familiarity with the course of pretrial and trial proceedings, there may be circumstances in which it would be impractical or inappropriate for the original trial judge also to hear the fee dispute. We express no opinion whether the trial judge's referral to the ethics committees in this case is such a circumstance. We leave the determination of which judge should preside over the hearing on the remand to the Assignment Judge or Presiding Judge of the Family Part.