NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2217-16T2

SUSAN LUCAS,

     Plaintiff-Respondent,

v.

1 ON 1 TITLE AGENCY,
INC., NEW JERSEY TITLE
INSURANCE CO., A.
SCHANCUPP & ASSOCIATES,
INC., ARNOLD SCHANCUPP,
ESQ., ALL-COUNTY SURVEYING,
PC, and GEORGE W. LATOS,

     Defendants.

_____

SUSAN LUCAS,

     Plaintiff-Respondent,

v.

NEW JERSEY DEPARTMENT OF
TRANSPORTATION, STATE OF
NEW JERSEY, THE BOROUGH OF
MANTOLOKING, THE COUNTY
OF OCEAN, MOUNT CONSTRUCTION,
and ARORA AND ASSOCIATES, PC,

     Defendants.

_____

| APPROVED FOR PUBLICATION |
| --- |
| **August 9, 2019** |
| **APPELLATE DIVISION** |

Argued December 19, 2018 – Decided August 9, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-3144-13 and L-0701-14.

John M. Hanamirian argued the cause for appellant Freeborn & Peters, LLP (Hanamirian Law Firm, PC, attorneys; John M. Hanamirian, on the brief).

Jay J. Rice argued the cause for respondent Susan Lucas (Nagel Rice, LLP, attorneys; Jay J. Rice and Randee M. Matloff, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

The attorneys who successfully represented plaintiff in the prosecution of a legal malpractice action sought counsel fees from plaintiff that exceeded the amount of consequential damages proximately caused by the attorney/tortfeasor. When plaintiff and the attorneys were unable to agree on the fee, the trial judge who presided over the legal malpractice action sua sponte decided to adjudicate the fee dispute over the attorneys' objection. At the time the trial judge asserted this authority, plaintiff had not sought to resolve the fee dispute before the District Fee Arbitration Committee pursuant to Rule 1:20A-1 to -6, and the attorneys had not filed a separate collection action against plaintiff.

In response to the attorneys' appeal, we now reverse. The fee dispute between plaintiff and her attorneys is not part of the underlying legal malpractice action. Plaintiff's attorneys were not a party in the case and had not filed a collection action against plaintiff nor sought relief under N.J.S.A. 2A:13-5, commonly known as the Attorney's Lien Act. Under these facts, the trial judge did not have subject matter jurisdiction to adjudicate this counsel fee dispute.

I

Plaintiff Susan Lucas retained Freeborn & Peters LLP (Freeborn), a law firm located in Cook County, Illinois, to prosecute a legal malpractice action against Arnold Schancupp & Associates, a New Jersey law firm who represented her in the purchase of her home in the Borough of Mantoloking, Ocean County. Lucas claimed Schancupp failed to disclose that the property was subject to a storm water easement. She also claimed the New Jersey Department of Transportation (NJDOT) was negligent by installing the storm water pipe under the foundation of her home.

The trial began in May 2016 and lasted a total of twenty-two days. In this State, "a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action." Saffer v. Willoughby, 143 N.J. 256, 272 (1996). The Court deemed

these expenditures as "consequential damages that are proximately related to the malpractice." Ibid. Lucas prevailed against her former real estate attorney.[1] The jury awarded plaintiff $980,000 as compensatory damages. Thereafter, the trial judge held a bench trial and awarded Lucas an additional $99,506.10 as consequential damages.

The parties appeared before the trial judge on September 27, 2016, seeking to address how to determine the question of Lucas's outstanding legal fees. Because Lucas's cause of action included other parties, the judge recognized that Schancupp might not be liable for all of Lucas's consequential damages. In an order entered on September 30, 2016, the trial judge memorialized a protocol for the parties to conduct limited discovery. The court agreed to decide how much of the counsel fees Schancupp was required to pay Lucas by November 15, 2016. At the parties' request, the judge agreed to delay his decision. In a telephonic conference held on November 18, 2016, Lucas informed the judge that she had settled all of her counsel-fees claims against Schancupp. The only remaining question concerned Freeborn's outstanding fees.

---

[1] The jury returned a "verdict of no cause of action" in favor of the NJDOT. The remaining defendants named in the caption were not part of this trial.

Lucas paid Freeborn over $400,000 in the course of the litigation. At the conclusion of the trial, Freeborn submitted a statement of account for $1,727,168.52, reflecting the balance of attorney's fees Lucas owed to Freeborn. Darren VanPuymbrouck, an attorney at Freeborn, "assured the court that his law firm and Ms. Lucas would resolve their differences without the necessity of the court's intervention." The judge informed the parties that if they were unable to reach an agreement, "the court would resolve the dispute at the December 13, 2016 plenary hearing." In his memorandum of opinion, the judge noted that neither Lucas nor VanPuymbrouck objected to this procedure.

The retainer agreement between Lucas and Freeborn contained a provision that designated the Cook County, Illinois courts as the forum to adjudicate all disputes arising from their attorney-client relationship. In a telephone conference held on December 2, 2016, VanPuymbrouck apprised the judge and Lucas that Freeborn objected to the jurisdiction of the New Jersey court to resolve the legal dispute with its client. Lucas advised the judge that she intended to separately dispute the reasonableness of Freeborn's fees.

Lucas did not file a separate claim against appellant, and the firm is not listed in the trial court's order. Despite the parties' positions, the trial court conducted a plenary hearing to determine the reasonableness of Freeborn's fees,

5

and entered an order reducing the counsel fees from approximately $1.7 million to approximately $359,000. Lucas did not file a complaint or petition challenging Freeborn's fees.

Freeborn appeals from that order, arguing the court did not have jurisdiction to set its fee. It claims the court improperly interjected into the dispute between Lucas and Freeborn and without Freeborn's consent disregarded the forum selection clause in the retainer agreement. Freeborn also argues the judge improperly asserted jurisdiction over this dispute based on the erroneous belief that Lucas relied on Freeborn's purported consent to her decision to settle her claims against Schancupp, and improperly relied on the firm's pro hac vice admission to find jurisdiction. Finally, Freeborn argues the judge sua sponte and improperly decided this dispute over counsel fees without a formal complaint or petition for fees having been filed.

We agree with Freeborn that under these circumstances, the Law Division did not have jurisdiction to decide this fee dispute. The fee dispute between Lucas and Freeborn was not part of the legal malpractice action against Schancupp. When this issue came before the court, the judge addressed the parties and stated: "You have two alternatives; you can go through Fee Arbitration, [Rule 1:20A-1 to -6] or you can submit it to the [c]ourt, but the Fee

Arbitration Rules indicate that if the fee exceeds one hundred thousand dollars, that the Fee Arbitration committee has the right to say, 'We are not getting involved.'"[2]  Thus, as framed by the trial court, Lucas could file a petition with the District Fee Arbitration Committee, with the strong likelihood the Committee would decline jurisdiction, or wait for Freeborn to initiate legal action against her to collect the outstanding fees.  However, the judge did not consider himself bound by these two options.

On December 2, 2016, the court expressed its intention to proceed with the plenary hearing over Freeborn's objection:

> MR. VANPUYMBROUCK: As Mr. Campobasso had stated earlier, with all due respect, we don't consent to having the court adjudicate any dispute between ourselves and our client.  And so, with all due respect again, I don't think any additional information needs to be provided to this court.
>
> THE COURT: All right.
>
> MR. VANPUYMBROUCK: And I think we conveyed that position previously.  So as I said, with all due respect, we just don't think there's any need to proceed any further.

---

[2]  Rule 1:20A-2(b)(3).

THE COURT: Well, with all due respect, if Ms. Lucas wishes the court to resolve the matter, the [c]ourt is in a position to do so and fully intends to do so.

MR. VANPUYMBROUCK: Yes, Your Honor, but --

THE COURT: I'm interested in Ms. Lucas' position. Would you like the [c]ourt to resolve the matter, or do you wish to have it done on your own?

MS. LUCAS: Well, I wish to have the matter resolved with the [c]ourt, Your Honor.

THE COURT: All right. The court [has] indicated previously that it intends to have a plenary hearing on December the 13th. That's the date of the hearing. You may attend the hearing and present the proofs that you find are appropriate, and the [c]ourt will proceed accordingly.

MR. VANPUYMBROUCK: Your Honor, can I be heard and on the record please?

THE COURT: You are on the record.

MR. VANPUYMBROUCK: Yes. Your Honor, this is a matter in which my law firm, Freeborn & Peters, [has] an interest. They're not a party before this court or never have been. They never consented to being a party before this [c]ourt, and we're of the position we're not a party and won't consent to that. With all due respect, even though Ms. Lucas may prefer to proceed before this [c]ourt, that does not dictate our position. So, it's very clear to me that you do not have authority to -- not you, personally, but the court does not -- adjudicate a matter involving Freeborn & Peters at this point --

THE COURT: How do you come to that conclusion?

8

MR. VANPUYMBROUCK: I'm sorry?

THE COURT: How do you come to the conclusion that this [c]ourt does not have jurisdiction to resolve a dispute on legal fees between a party and its law firm on a matter that was litigated in front of this [c]ourt?

MR. VANPUYMBROUCK: Jurisdiction is a separate issue, Your Honor. It's a matter of ripeness at this point. It's a matter of consent. <u>There's nothing pending before this [c]ourt that would allow the [c]ourt to adjudicate a dispute between Ms. Lucas and Freeborn & Peters</u>. So that's our position.

THE COURT: Well, then -- then I am going to indicate to the Morgan Melhuish firm that they are not to release the money to you. <u>And that as soon as Ms. Lucas files a complaint to -- or a show cause order to receive her funds, I will hold the plenary hearing to resolve how it should be divided</u>.

MR. VANPUYMBROUCK: Right, Your Honor. With due respect, we object to that and don't believe that this [c]ourt has the authority to do that.

THE COURT: Well, when you provide me persuasive authority that you are certain divest[s] me of that authority, I would be interested to read it. I would suggest to you, if you have not done so already, to review the case of <u>Levine v. Levine</u>,[3] which sets forth a procedure for the court to proceed in this type of matter.

MR. VANPUYMBROUCK: Your Honor, I'm more than happy to look at any authority the [c]ourt cites. If there's anything else you want us to look at, we'd be

---

[3] 381 N.J. Super. 1 (App. Div. 2005).

happy to do that. But we don't believe that's going to change our position, which is there is no ripe controversy before the [c]ourt, so…

THE COURT: Well then, Ms. Lucas, I'm indicating to both of you that I'm going to contact the Morgan Melhuish firm, tell them that they are not to send the money until the [c]ourt resolves the matter that Ms. Lucas has indicated that there is a dispute between herself and the Freeborn Peters firm. And that once that matter is resolved, that the [c]ourt will indicate how it is to be divided.

MR. VANPUYMBROUCK: So, Your Honor, what -- on what basis would the [c]ourt have authority over Freeborn & Peters not a party before the [c]ourt?

THE COURT: Because I assume that if you can't resolve the matter between yourselves, that Ms. Lucas will file a complaint with the [c]ourt asking the [c]ourt to remedy the dispute.

MR. VANPUYMBROUCK: Well, that assumption does not make it a reality, and with all due respect, Your Honor, it does not provide this [c]ourt in our view, again with all due respect, the authority to adjudicate a matter involving Freeborn & Peters.

[(Emphasis added).]

When the judge thereafter asked Lucas if she intended to challenge the reasonableness of Freeborn's fees, she replied: "Yes, I have no choice at this point."

## II

In <u>Saffer</u>, the Court created an exception to the "American Rule" in legal malpractice cases because the recovery of such fees are "consequential damages that are proximately related to the malpractice." 143 N.J. at 272. The Court thereafter extended the rationale of <u>Saffer</u> to claims against attorneys who intentionally violate their fiduciary duties in <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 444 (2001). In both cases, counsel fees are a measure of damages that a plaintiff must prove and a fact-finder must determine based on the evidence.

There is a significant, material difference between an award of counsel fees under a fee-shifting statute, court rule, or contractual provision, and a fee dispute between a client and her own attorney. As Judge Pressler noted in <u>Gruhin & Gruhin, P.A. v. Brown</u>, 338 N.J. Super. 276, 281 (App. Div. 2001), a "client who has retained an attorney and promised to pay him stands on a completely different footing from the recipient of a fee-shifting allowance" and the amount a plaintiff seeks to recover under fee shifting is separate and distinct from the amount the plaintiff owes her attorney.

Freeborn's right to recover counsel fees against Lucas here arises under the retainer agreement executed by the parties. The trial judge's reliance on

Levine was misplaced because Levine "involves the right of an attorney in a matrimonial action to petition for a charging lien on the client's assets and the procedures to be followed in adjudicating such a petition." Id. at 4. Pursuant to Rule 1:20A-6, the attorney notified the delinquent client of her right to pursue fee arbitration and "provided her with the name and address of the secretary to the district fee arbitration committee." Levine, 381 N.J. Super. at 6. The client filed a petition before the Fee Arbitration Committee, which it declined to adjudicate because the amount of the fee in dispute exceeded $100,000.[4] Id. at 7.

The attorney in Levine sought relief from the court by filing a petition before the judge in the underlying matrimonial action for the "entry of an order setting a date for a plenary hearing." Id. at 7. However, the judge "refused to either impose a charging lien upon respondent's assets or schedule a plenary hearing." Ibid. The judge dismissed the petition and directed the attorney to pursue "the usual procedure" and file a "separate action to collect the unpaid legal fees." Ibid. The attorney appealed to this court. Relying on the Attorney's Lien Act, N.J.S.A. 2A:13-5, we reaffirmed that the "lien provided by this statute

_____

[4]  Our colleagues in Levine cited Rule 1:20A-2(c)(1). This was an earlier codification of Rule 1:20A-2(b)(3).

'is intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered.'" Id. at 9 (quoting Martin v. Martin, 335 N.J. Super. 212, 222 (App. Div. 2000)).

The Attorney's Lien Act is "rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts." Ibid. (quoting Martin, 335 N.J. Super. at 222). An attorney has the discretion to file a petition for a lien "either before or after entry of the judgment in the underlying action." Ibid. Of particular relevance here, "N.J.S.A. 2A:13-5 does not authorize a trial court to dismiss a petition for an attorney's lien based on its preliminary view, derived from the evidence presented in the underlying action, that the fees claimed by the attorney are excessive." Id. at 10.

The procedural and substantive due process considerations reflected in Levine stand in sharp contrast to the ad hoc approach the trial judge employed here. Freeborn did not file a petition pursuant to N.J.S.A. 2A:13-5 requesting the trial court to adjudicate its fee dispute with Lucas. The court intruded in this dispute over Freeborn's repeated objections and Lucas's acquiescence, which in no way endowed the court with the subject matter jurisdiction to adjudicate this fee dispute. Because the trial court did not have the legal authority to unilaterally assert jurisdiction over this fee dispute, the court's decision to sua

sponte adjudicate this dispute was an ultra vires act; any relief awarded by the court in this context is a legal nullity.

Freeborn must file a separate cause of action to adjudicate its claim for counsel fees against Lucas. We express no opinion about the enforceability of the forum selection clause in the retainer agreement.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2217-16T2