NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-2551-18
A-2552-18
A-2553-18
A-2554-18
A-2726-18
A-2731-18
A-2758-18
A-3579-18
A-4190-18
A-4191-18

JAMES T. KOPEC,

      Plaintiff-Respondent,

v.

ANNA M. MOERS,

      Defendant.

_____

JOSEPH LOPRESTI,

      Plaintiff-Respondent,

v.

JENNIFER LOPRESTI,

      Defendant.

_____

APPROVED FOR PUBLICATION

January 13, 2022

APPELLATE DIVISION

RICK G. ZORN,

 Plaintiff-Respondent,

v.

CHRISTINA ZORN,

 Defendant.

_____

SAMUEL MCGEE,

 Plaintiff-Respondent,

v.

LILLIAN MCGEE,

 Defendant.

_____

SANDRA WEED,

 Plaintiff,

v.

LEROY WEED II,

 Defendant-Respondent.

_____

MARY DETER,

 Plaintiff,

v.

ROY L. DETER,

Defendant-Respondent.

_____

KAREN PREVETE, f/k/a
MENDIBURU,

    Plaintiff-Respondent,

v.

THOMAS MENDIBURU,

    Defendant.

_____

CHRIS DEFONTES,

    Plaintiff,

v.

NICOLE DEFONTES,

    Defendant-Respondent.

_____

CHRISTINE OSHIDAR,

    Plaintiff-Respondent,

v.

DARIUS OSHIDAR,

    Defendant.

_____

3

SUZZAN M. HEISLER,

 Plaintiff,

v.

ERIC HEISLER,

 Defendant-Respondent.

_____

   Submitted December 13, 2021 – Decided January 13, 2022

   Before Judges Messano, Rose and Enright.

   On appeal from the Superior Court of New Jersey,
   Chancery Division, Family Part, Sussex, Union,
   Morris and Burlington Counties, Docket Nos. FM-19-
   0423-15, FM-19-0177-16, FM-19-0063-14, FM-20-
   0815-15, FM-14-0311-16, FM-14-0691-16, FM-14-
   1312-04, FM-14-0753-13, FM-03-1029-12, and FM-
   03-1221-13.

   Weinberger Divorce & Family Law Group LLC,
   appellant pro se (Jessica Ragno Sprague and Bari Z.
   Weinberger, on the briefs).

   Respondents have not filed briefs.

 The opinion of the court was delivered by

ENRIGHT, J.A.D.

 In these ten one-sided appeals, which we consider back-to-back and have

consolidated for the purpose of writing a single opinion, appellant Weinberger

Divorce & Family Law Group LLC (the firm), challenges the denial of its

motions to enforce the terms of its retainer agreement (RA) to obtain a

A-2551-18

judgment against its former clients for unpaid fees, or alternatively, to compel the former clients to submit to binding arbitration to resolve the parties' fee disputes. We affirm.

I.

We briefly summarize the facts of each appeal to provide context for our decision.

A.    The Retainer Agreements Executed in All Cases

The firm entered into written RAs with each client. Seven of the agreements, those executed in Kopec, Lopresti, Zorn, McGee, Weed, Deter, and DeFontes, are titled "Matrimonial Retainer Agreement." The three remaining agreements, executed in Prevete, Oshidar, and Heisler, are titled "Post-Judgment Retainer Agreement." Although titled differently, all agreements contain nearly identical language.

Paragraph One of the RA explains the hourly fee arrangement and discloses the hourly rates for attorneys and paralegals. Paragraph Two describes the legal services that the firm will provide. Paragraph Three requires an initial retainer payment, which "is not intended as an indication of the final costs of the proceedings." Paragraphs Four and Five require the client to pay various costs and disbursements, plus a monthly fixed office charge. Paragraph Six requires that the client submit payments within seven days of

5

receipt of the invoices emailed monthly. Paragraph Seven explains that if a trial or hearing is needed, another retainer payment of $15,000 will be due thirty days before it begins. Paragraph Eight states that "[i]f no comment is received" from the client within two weeks of an invoice's receipt, it is "deemed correct . . . and accepted" by the client. Paragraph Eleven states that if the client does not pay an invoice in full within thirty days, "interest shall apply to any outstanding balance which shall be calculated at the rate of [eighteen percent] . . . per annum on the declining balance, or such higher rate as allowed by law on judgments."

We highlight more fully Paragraphs Fifteen and Seventeen of the RA, considering the issues raised on appeal. Paragraph Fifteen is titled "Attorney Withdrawal," and states:

> If the firm chooses not to exercise its option to withdraw in the event of any defaults to the Agreement, the firm does not waive its right to enforce any and all provisions of this Agreement. <u>If it becomes necessary to bring a lawsuit for collection of the amounts due us under this Agreement, you will also be responsible for our court costs and reasonable attorney's fees</u>.

> [(Emphasis added).]

Paragraph Seventeen is titled, "Arbitration of Differences Between the Client and the Firm," and provides:

6

You agree that should <u>any</u> dispute between you and the firm arise as to its representation of you, <u>the matter shall be submitted to binding arbitration</u>. As such, <u>you agree to file the applicable papers with the appropriate Fee Arbitration Committee within 30 days of your receipt of a Pre-Action Notice</u> pursuant to <u>R. 1:20A-6</u> in order to have such issue resolved in that forum. <u>Should you fail to submit the fee dispute to fee arbitration within the specified time, or should the Fee Arbitration Committee refuse to accept jurisdiction, or the differences between you and the firm involve a matter other than fees and costs, you or the firm may submit the dispute to binding arbitration governed by the New Jersey Uniform Arbitration Act</u>, N.J.S.A. 2A:24-1 et seq. An arbitrator shall be chosen by consent or in accordance with N.J.S.A. 2A:24-5, the fees for which shall be an issue to be determined by the arbitrator. Any arbitrator award shall be confirmed by the Superior Court of New Jersey in accordance with N.J.S.A. 2A:24-8, and a judgment entered in accordance with N.J.S.A. 2A:24-2 & 10. Signing of this Agreement will be deemed your consent to the method of alternative dispute resolution set forth in this Section, and constitutes a waiver on your part and on the part of the firm to have such dispute(s) resolved by a court.

[(Emphasis added).]

The final section of the RA states that by signing the RA, the client "acknowledge[s] the following":

a.    you have fully read and understand the terms of this Agreement;

b.    the terms and provisions of the Agreement have been fully explained to you to your satisfaction;

7

c.     all of your questions about the Agreement have been fully and completely answered;

d.     you have had sufficient time to consider all of the terms set forth in this Agreement, and that you acknowledge that you have the right to have this Agreement reviewed by another attorney outside of the firm prior to signing this Agreement;

e.     you have the ability to and will fully and completely comply with the terms of this Agreement;

f.     you specifically agree to the arbitration provisions, particularly the waiver of your right to submit any dispute between you and the firm to a court for resolution or trial by jury; and

g.     you have been given a copy of this Agreement.

Attached to each of the Matrimonial RAs (versus the Post-Judgment RAs executed in Prevete, Oshidar, and Heisler), is a two-page document entitled, "DIVORCE – DISPUTE RESOLUTION ALTERNATIVE TO CONVENTIONAL LITIGATION [Text Promulgated 12/04/06 as Approved by the Supreme Court]." The document contains a section discussing arbitration, which states:

> In an arbitration proceeding, an impartial third part[y] decides issues in a case. The parties select the arbitrator and agree on which issues the arbitrator will decide. The parties also agree in advance whether the arbitrator's decisions will be binding on them or instead treated merely as a recommendation. While an arbitrator may decide issues within a divorce case, the judge would still make the final determination as to whether to grant the divorce.

8                                        A-2551-18

B. The Pre-Action Notices of Fee Arbitration Sent in All Cases

Once a fee dispute arose in each of the ten cases before us, the firm mailed the client a pre-action notice (PAN) via regular and certified mail pursuant to <u>Rule</u> 1:20A-6. The PAN stated that the client owed the firm legal fees and that the firm would "place [the] account into suit" unless the client complied with the RA and paid the "total outstanding balance."

The PAN explained that if any outstanding fees were disputed, the client "ha[d] <u>the opportunity</u> to file for an arbitration hearing" with the District Fee Arbitration Committee by contacting them at the address or phone number provided. (Emphasis added). It emphasized that if the process was not initiated within thirty days, the client would lose the right to pursue this process. Finally, it advised that if the firm did not receive notice that the client requested arbitration, it would "<u>have no alternative but to file a Complaint</u> for legal fees and costs outstanding in [thirty] days." (Emphasis added).

C. The Enforcement Motions Filed in All Cases

None of the ten clients requested fee arbitration with the District Fee Arbitration Committee. Consequently, in lieu of filing a complaint, the firm filed motions to enforce the RAs in the underlying matrimonial matters and sought entry of a judgment for the unpaid fees. Alternatively, the firm sought an order requiring it and the client "to attend binding arbitration governed by

9 <span>A-2551-18</span>

the New Jersey Uniform Arbitration Act, N.J.S.A. 2A:24-1 et. seq., with an Arbitrator to be selected by the [c]ourt from the listed options provided by [the firm] respecting the parties' fee dispute, in accordance with paragraph 17 of the" RAs.  The firm also sought an award of counsel fees.

In support of each motion, the firm submitted, among other proofs:  (1) a certification from Bari Z. Weinberger, Esq.; (2) a copy of the PAN sent to the client; (3) a copy of the client's RA; and (4) copies of the client's itemized monthly billing invoices.  It also submitted a memorandum of law arguing it was "entitled to summary judgment in the sum [owed by the client] together with contract interest and attorney's fees."

D.    The Unique Procedural Histories and Facts in Each Case

1.    The Sussex County Cases

a.  Kopec v. Moers

In December 2017, the firm mailed James T. Kopec a PAN, via regular and certified mail, stating he owed the firm $3,814.71 as of November 30, 2017.  In November 2018, the firm filed a motion to enforce the RA and certified that it served Kopec with the motion as required by Rule 1:5-3.

In December 2018, the judge assigned to the matter denied the uncontested motion without prejudice.  Citing Rule 5:1-2, the judge rejected the firm's reliance on Levine v. Levine, 381 N.J. Super. 1 (App. Div. 2005), to

10

support its claim that the Chancery Division, Family Part should hear its motion. The judge observed that in <u>Levine</u>, the movant sought an attorney lien pursuant to N.J.S.A. 2A:13-5, whereas the firm did not seek such a lien against Kopec. Further, the judge concluded that an attorney fee award was "premature" because "a lawyer's fee must be reasonable" and a court must perform an analysis consistent with the Rule of Professional Conduct (RPC) 1.5(a) to make a fee determination.

The judge also cited to <u>Giarusso v. Giarusso</u>, 455 N.J. Super. 42, 55 (App. Div. 2018), noting in that case, we held "[a] petition for fees is to be tried as a separate and distinct plenary action with the right to conduct discovery and a pre-trial conference." Additionally, the judge determined that although the dispute "may still be subject to arbitration," the law firm had "not cited to any case law in support of the enforcement of the arbitration clause and whether [it] conforms with the Supreme Court's holding in <u>Atalese v. U.S. Legal Servs. Grp., L.P.</u>, 219 N.J. 430 (2014)." The firm subsequently moved for reconsideration of the judge's ruling, and on January 25, 2019, the judge denied the uncontested reconsideration motion.

### b. Lopresti v. Lopresti

In September 2018, the firm mailed Joseph Lopresti a PAN, via regular and certified mail, stating he owed the firm $27,410.70 as of August 31, 2018.

In November 2018, the firm moved to enforce the RA and certified it served Lopresti with the motion as required by Rule 1:5-3.

On December 7, 2018, the same judge assigned to the Kopec matter denied the uncontested motion without prejudice, for the same reasons he stated in Kopec. Two weeks later, the firm moved for reconsideration, and on January 25, 2019, the judge denied the uncontested reconsideration motion.

### c. Zorn v. Zorn

On September 2, 2015, the firm mailed Rick G. Zorn a PAN, via regular and certified mail, stating he owed the firm $2,450.65 as of the date of the letter. In November 2018, the firm moved to enforce the RA and certified that it served Zorn with the motion as required by Rule 1:5-3.

On December 7, 2018, the judge previously assigned to the Kopec and Lopresti matters denied the uncontested motion without prejudice, for the same reasons he provided in the Kopec and Lopresti decisions. The firm's subsequent motion for reconsideration was denied on January 25, 2019.

### 2. The Union County Case

### a. McGee v. McGee

In June 2018, the firm mailed Samuel McGee a PAN, via regular and certified mail, confirming he owed the firm $5,422.48 as of May 31, 2018. Approximately three months after it sent McGee the notice, the firm moved to

enforce the RA.  McGee filed a cross-motion, seeking dismissal of the motion on the grounds:  (1) the motion was improperly venued; (2) it violated his attorney-client privilege; and (3) he signed the RA under duress.  McGee sought to void the RA and requested $5,000 in punitive damages.

On October 29, 2018, the judge hearing the application denied the firm's motion, granted McGee's cross-motion to dismiss the firm's motion, and denied without prejudice his requests for punitive damages and to void the RA. The judge concluded the firm was not entitled to a judgment for the unpaid fees because although "there may not be a dispute over the amount of fees, there is a dispute of . . . material fact regarding the validity of the RA, what the parties agreed to when they signed it, and how that agreement should be interpreted."

Citing Rule 4:3-1(a)(3) and distinguishing Levine, 381 N.J. Super. at 10, the judge further concluded that the Family Part was an improper forum because the matrimonial action "is entirely irrelevant to the principle claim here, which is a contractual claim" that does not "arise out of a family type relationship."  Consequently, it held that the Law Division should decide questions concerning enforcement of the RA and whether the matter should be referred to binding arbitration.

After the firm moved for reconsideration, McGee filed an untimely response, which the court did not consider. On January 4, 2019, the court denied the firm's reconsideration motion, concluding that since the Chancery Division, Family Part was an improper forum for the enforcement motion, the court lacked "jurisdiction to order the parties to attend binding arbitration to resolve the nonpayment of . . . fees."

### 3. The Morris County Cases

#### a. Weed v. Weed

In November 2016, the firm mailed LeRoy Weed II a PAN, via regular and certified mail, noting Weed owed the firm $6,005.38 as of October 31, 2016. The firm moved in October 2018 to enforce the RA and certified that it served Weed with the motion as required by Rule 1:5-3.

The following month, the judge assigned to the matter denied the firm's uncontested motion without prejudice, concluding that an attorney fee award was "premature" because the court must perform "an RPC 1.5 analysis to make a fee determination" and fee petitions are to be tried as a plenary action. The judge also determined that although the dispute "may still be subject to arbitration," the firm had "not cited to any case law in support of the enforcement of the arbitration clause and whether [it] conforms with the Supreme Court's holding in Atalese."

In December 2018, the firm moved for reconsideration, and the judge denied the unopposed motion on February 1, 2019, finding that while he agreed with the firm that the Chancery Division, Family Part was an appropriate forum for the motion, he could not "make necessary findings of fact and conclusions of law . . . to provide the basis for any fee award" and complete an analysis of the RPC 1.5(a) factors, because the firm "failed to provide any certification of services or otherwise address any of the factors." Also, the judge reiterated that the firm failed to establish the arbitration clause complied with Atalese.

### b. Deter v. Deter

On July 24, 2017, the firm mailed Roy L. Deter a PAN, via regular and certified mail, advising him that he owed the firm $7,610.96 as of June 30, 2017. In October 2018, the firm moved to enforce the RA and certified that it served Deter with the motion as required by Rule 1:5-3.

On November 30, 2018, the judge who had decided the enforcement motion in Weed denied the firm's uncontested motion against Deter without prejudice, applying the same analysis the judge set forth in Weed. Approximately two months later, the judge denied the firm's unopposed reconsideration motion.

c.  Prevete v. Mendinburu

In February 2018, the firm mailed Karen Prevete a PAN, via regular and certified mail, stating she owed it $4,772.90 as of December 31, 2017. Approximately six months later, the firm moved to enforce the RA and certified that it served Prevete with the motion as required by Rule 1:5-3.

On October 29, 2018, the judge assigned to the matter denied the uncontested motion without prejudice, finding "an award of attorney's fees is premature" because "the [c]ourt must engage in an analysis as to whether [the requested fees] are reasonable" in "a separate and distinct plenary action with the right to conduct discovery and a pre-trial conference."  Further, the judge concluded that ruling on the matter would not "serve the interests of judicial economy and efficiency" because other judges had presided over the underlying matrimonial action.  On February 4, 2019, the judge denied the firm's uncontested motion for reconsideration.

d.  DeFontes v. DeFontes

In July 2013, appellant mailed Nicole DeFontes a PAN, via regular and certified mail, informing her she owed the firm $9,210.01 as of June 29, 2013. The firm moved in October 2018 to enforce the RA and certified that it served DeFontes with the motion as required by Rule 1:5-3.

16

On December 10, 2018, the judge assigned to the case denied the firm's uncontested motion without prejudice. He concluded that "an award of attorney's fees is premature" because it "must determine [the fees] are reasonable" in a plenary action. Additionally, the judge found the firm "has not cited to any case law in support of the enforcement of the arbitration clause and whether [it] conforms with the Supreme Court's holding in Atalese." On April 2, 2019, the judge denied the firm's uncontested motion for reconsideration.

### 4. The Burlington County Cases

#### a. Oshidar v. Oshidar

In July 2018, the firm mailed Christine Oshidar a PAN, via regular and certified mail, advising her that she owed it $8,479.87 as of June 30, 2018. In January 2019, the firm moved to enforce the RA and certified that it served Oshidar with the motion as required by Rule 1:5-3.

On February 15, 2019, the judge assigned to the matter denied the uncontested motion, noting the firm sought, "in effect, [s]ummary [j]udgment per R[ule] 4:46-2(c)." The judge initially addressed the forum issue and concluded that none of the cases cited by the firm "provide[d] any legal support for the proposition that the Chancery Division, Family Part, has the authority under its [dissolution] docket number to decide a contractual matter

17

between" the firm and its former client. The judge also rejected the firm's reliance upon Levine, 381 N.J. Super. at 10, as well as its reliance on other cases interpreting N.J.S.A. 2A:13-5, because the firm did not seek a lien against Oshidar. But the judge added that the firm "clearly has a remedy available to it by way of an appropriate Complaint in the Law Division."

Turning to the merits of the firm's motion, the judge found he could not "glean any sufficient factual or legal basis that would permit the [c]ourt to enforce the terms of the [RA] in general and the arbitration provision in particular." He expressed that he had "several concerns" about Paragraph Seventeen of the RA. Noting the title of this paragraph was "Arbitration of Differences Between Client and the Firm," the judge stated he was "unclear on the extent of the 'differences' subject to this arbitration process." Further, the judge observed that "[w]hile the [RA] specifically references the arbitration process, nowhere does it contain how non-fee 'differences,' for example, malpractice or other actions against the attorney[,] would be handled." The judge also stated he was "not aware of any statutory, case law, Court Rules, or other procedures requiring family law litigants to submit themselves to the binding arbitration process without their consent." Moreover, he found the "Fee Arbitration Committee is subject to a voluntary decision being made by

the litigant," so that the RAs "mandatory requirement for . . . 'binding arbitration' does not appear to have any basis in the law."

The judge also analyzed Paragraph Seventeen against the legal framework set forth in <u>Kernahan v. Home Warranty Administrator of Florida, Inc.</u>, 236 N.J. 301 (2019), and <u>Atalese</u>. For example, he found that while the disputed arbitration provision in <u>Kernahan</u> "appeared on the last page of the contract . . . with the introductory paragraph of the provision . . . in bold print," the firm's binding arbitration provision appeared at the end of the RA without "bold or capitalized print." Additionally, the judge referenced the "obvious confusion" in the wording of Paragraph Seventeen, noting the first sentence requires "differences" to be submitted to binding arbitration, but the second sentence "talks about the fee arbitration process" before the District Fee Committee, and then the language that follows "turns back to binding arbitration under the Uniform Arbitration Act" without giving the litigant the right "to choose arbitration under the Alternative Dispute Resolution Act if they choose to do so."

The judge concluded, too, that the firm's PAN added to the confusion created by the RA, as the last paragraph of the PAN provided:

> You will lose your right to initiate the arbitration action if you do not promptly communicate with the Fee Arbitration Secretary and file the approved formal request for fee arbitration within 30 days. I will have

19

> no alternative but to file a Complaint for Legal Fees and Costs Outstanding in 30 days if I have not received a notice that you have requested arbitration.

He explained that "the word 'Complaint'" "implies that some form of legal action would be filed in court and at that point the [former client] would have the opportunity to answer that Complaint and file any other appropriate actions."

The judge also expressed concern that in the certification provided by the firm, there were "no allegations relating to communications between [an attorney from the firm]" and the former client about "her right to seek adjudication of fee disputes by way of an action in the Law Division." Accordingly, the judge denied the firm's uncontested motion on February 15, 2019.

Subsequently, on April 26, 2019, the judge entered an order, denying the firm's uncontested reconsideration motion. He found the firm failed to provide "any additional factual and/or legal basis as to why the [c]ourt should reconsider the February 15 . . . [o]rder."

### b. Heisler v. Heisler

In September 2018, the firm mailed Eric Heisler a PAN, via regular and certified mail, notifying him that he owed the firm $7,514.90 as of August 31,

20

2018. Roughly four months later, the firm moved to enforce the RA and certified that it served Heisler with the motion as required by Rule 1:5-3.

On February 15, 2019, the same day the judge denied the firm's enforcement motion on Oshidar, he denied the uncontested enforcement motion on Heisler, applying the same analysis in both cases. Thereafter, the firm moved for reconsideration of the February 15 order and the judge denied the uncontested motion.

On appeal, the firm presents the following arguments for our consideration:

POINT I

THE FAMILY PART IS THE APPROPRIATE FORUM TO HEAR ALL FEE[-]RELATED ISSUES.

POINT II

THE REQUEST FOR BINDING ARBITRATION SHOULD HAVE BEEN GRANTED IF THE TRIAL COURT WAS NOT GOING TO ENTER A JUDGMENT FOR FEES.[1]

In its supplemental briefs, the firm raises the following additional contentions:

---

[1] In the McGee and Prevete appeals, the firm only advances the argument set forth in Point I.

[THE CASE OF] <u>DELANEY V. DICKEY</u>[2]
DOES NOT APPLY TO THIS MATTER

A.) The prohibition against retroactive application prevents the application of <u>Delaney v. Dickey</u> to this matter.

B.) The terms of the [firm's RA] are factually different from those in <u>Delaney v. Dickey</u>.

C.) This matter is distinguishable as the client[s] [were] not disputing the terms of arbitration.

We dispense with the firm's supplemental arguments first. In short, we agree with its position that the firm's former clients do not benefit from the new rule announced in <u>Delaney v. Dickey</u>, which requires an attorney to "discuss with the client the basic advantages and disadvantages of a provision in a retainer agreement that mandates the arbitration of a future fee dispute or malpractice claim against the attorney." 244 N.J. at 496. Indeed, the <u>Delaney</u> Court made clear that its holding was to be applied prospectively, stating:

> Because the professional obligation we now impose may not have been reasonably anticipated and would unsettle expectations among lawyers, we apply this new mandate prospectively, with one exception. Applying the holding of our opinion here is "consistent with the usual rule that the prevailing party who brings a claim that advances the common law receive the benefit of his efforts." <u>See</u> <u>Estate of Narleski v. Gomes</u>, 244 N.J. 199, 204 (2020).

---

[2] 244 N.J. 466, 472-73 (2020).

[Id. at 474.]

Consequently, when determining the enforceability of the arbitration provisions contained in the firm's RA, the ordinary contract principles applicable to arbitration provisions in consumer and employment contracts apply, and the heightened Delaney standard does not.

Regarding the firm's argument in Point I that certain trial courts erred in finding the Chancery Division, Family Part was not the proper forum to address its enforcement applications, we initially observe that "appeals are taken from orders and judgments and not from opinions, oral decisions, . . . or reasons given for the ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). "A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning." Ibid. Thus, to the extent any trial courts denied the firm's enforcement motions and determined the Chancery Division, Family Part was not the proper forum for the firm's applications, we are persuaded that reasoning is not subject to appeal. Nonetheless, for the sake of completeness, and to provide guidance to attorneys who may seek to collect unpaid fees against former matrimonial clients, we briefly address the forum issue.

23                                                      A-2551-18

"[T]he appropriate forum for the commencement of a specific claim is established by the Rules of Court." Solondz v. Kornmehl, 317 N.J. Super. 16, 19 (App. Div. 1998). Rule 5:1-2, "Actions Cognizable," governs which actions are cognizable in the Chancery Division, Family Part. Subsection (a) of the Rule provides that "[a]ll actions in which the principal claim is unique to and arises out of a family or family-type relationship . . . shall be filed and heard in the Chancery Division, Family Part." Subsections (b) and (c) provide that juvenile delinquency actions and certain criminal and quasi-criminal actions are also cognizable in the Family Part. R. 5:1-2(b), (c).

Subsection (a)(3) of Rule 4:3-1, "Divisions of Court; Commencement and Transfer of Actions," reiterates the parameters for actions cognizable in the Family Part set forth in Rule 5:1-2. Rule 4:3-1(a)(5) provides that "[a]ll actions in the Superior Court except those encompassed by subparagraphs (1), (2), (3), and (4) hereof shall be filed and heard in the Law Division or the Law Division, Special Civil Part." R. 4:3-1(a)(5). Subparagraphs (1) through (4) do not encompass actions to enforce RAs. Thus, the plain language of Rules 5:1-2 and 4:3-1 supports the conclusion that the Chancery Division, Family Part was not the proper forum to hear the firm's fee-related issues because the principal claims it asserted, i.e., contractual enforcement claims to collect unpaid legal fees, did not arise out of a family or family-type relationship, nor

were the firm's collection actions included in the case types listed in Rule 4:3-1(a)(3) and (a)(4).

We are cognizant that we held in Giarusso, 455 N.J. Super. at 55, "that a petitioning attorney may obtain a judgment against his or her client for the reasonable amount of unpaid legal fees in the underlying [divorce] action without filing a separate action in the Law Division."  But we came to this conclusion before Rule 4:3-1(a) was amended and became effective on September 1, 2018.[3]  In light of the 2018 amendment, only certain case types

---

[3]  Based on the revised rule, Rule 4:3-1(a) was modified as follows: subparagraphs (a)(1), (a)(2) and (a)(3) were amended, a new subparagraph (a)(4) was adopted, and former subparagraph (a)(4) was amended and redesignated as subparagraph (a)(5).  Notably, prior to the 2018 amendment, subparagraph (a)(3) read:

> Chancery Division – Family Part.  All civil actions in which the principal claim is unique to and arises out of a family or family-type relationship shall be brought in the Chancery Division, Family Part.  Civil family actions cognizable in the Family Part shall include all actions and proceedings provided for in Part V of these rules; all civil actions and proceedings formerly cognizable in the juvenile and domestic relations court; and all other actions and proceedings unique to and arising out of a family or family-type relationship.

However, post-amendment, subparagraph (a)(3) provides:

> Chancery Division – Family Part.  All actions in which the principal claim is unique to and arises out of a family or family-type relationship . . . shall be filed

are to be heard in the Chancery Division, Family Part "as specified." Considering the revisions to the <u>Rule</u> and reading subparagraphs (a)(1) through (a)(5) in their entirety, we are persuaded the firm's applications, all of which were decided after September 1, 2018, should have been filed as complaints in the Law Division and heard in that part of the Superior Court.

Lastly, in Point II, the firm contends the judges who heard the enforcement motions erred by failing to compel the firm's former clients to submit to binding arbitration when the judges declined to enter a judgment for fees. Again, we disagree.

When the firm filed its motions to collect outstanding fees in these back-to-back matters, it included a memorandum of law with each application, arguing, in part, that the firm was entitled to summary judgment in the amount of the former client's outstanding fees, together with contract interest and

---

and heard in the Chancery Division, Family Part. <u>Actions cognizable in the Family Part shall include all actions and proceedings referenced in Part V of these rules, unless otherwise provided in subparagraph (a)(4) of this rule</u>; all actions and proceedings formerly cognizable in the juvenile and domestic relations court; and all other actions and proceedings unique to and arising out of a family or family-type relationship.

[<u>R.</u> 4:3-1(a)(3) (emphasis added).]

26

attorney's fees.  But the firm's summary judgment requests were procedurally deficient because the firm failed to file a statement of material facts with its applications, as required by Rule 4:46-2(a).

Despite its flawed submissions, the firm contends on appeal that the Kopec, Lopresti, Zorn, Weed, Deter, Defontes, Oshidar, and Heisler matters were "clearly ripe for summary judgment" in its favor.  Alternatively, it argues that "if the trial court was not going to enter summary judgment on the fee issue, [it] should have referred the matter[s] to binding arbitration based upon the explicit terms of the [RA]."  These arguments are unavailing.

"Rule 4:46-2 provides that a court should grant summary judgment when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law.'"  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2(c)).  An appellate court reviews a trial court's summary judgment determination de novo, "[a]pplying the same legal standard that governs the trial court's review."  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

"Summary judgment requirements . . . are not optional."  Lyons v. Twp. of Wayne, 185 N.J. 426, 435 (2005).  "[F]ailure to file the required statement

alone warrants denial of the movant's motion." Ibid.; see Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2 on R. 4:46-2 (2022) ("[T]he moving party is required not only to support the motion with a brief but also with a statement of those material facts which the movant asserts to be materially undisputed, set forth in separate numbered paragraphs, each with precise record references. Failure to comply with this requirement may result in dismissal of the motion without prejudice."). Since the firm failed to comply with the procedural requirements set forth in Rule 4:46-2(a), we are convinced the judges hearing the firm's summary judgment applications committed no error by declining to grant summary judgment.

Moreover, even if the judges were able to look past the procedural defects accompanying the firm's summary judgment requests, we are persuaded the firm was not entitled to summary judgment as a matter of law in any of the cases, because the proofs it submitted were inadequate to permit a judge to determine whether the fees sought were reasonable.

"Courts scrutinize contracts between attorneys and clients to ensure that they are fair." Cohen v. Radio-Elecs. Officers Union, 146 N.J. 140, 155 (1996). "Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of

professional ethics." Ibid. The "agreement ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary." Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 281 (App. Div. 2001).

"A retainer agreement may not provide for unreasonable fees or for the unreasonable waiver of the clients' rights." Cohen, 146 N.J. at 156. "Attorneys have never had the right to enforce contractual provisions for more than a fair and reasonable fee." Am. Trial Laws. Ass'n v. N.J. Sup. Ct., 126 N.J. Super. 577, 591 (App. Div.), aff'd., 66 N.J. 258 (1974). "A lawyer's bill for services must be reasonable both as to the hourly rate and as to the services performed. That is not only the lawyer's legal obligation but [the lawyer's] ethical one as well." Gruhin, 338 N.J. Super. at 280.

Pursuant to RPC 1.5(a), "[t]he factors to be considered in determining the reasonableness of a fee include":

> (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)  the fee customarily charged in the locality for similar legal services;
>
> (4)  the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

When an attorney seeks the entry of a judgment for unpaid fees, he or she must prove the reasonableness of the fees by a preponderance of the evidence pursuant to RPC 1.5(a).  Cohen, 146 N.J. at 156 ("[T]he attorney bears the burden of establishing the fairness and reasonableness of the transaction.").  Courts tasked with determining the reasonableness of fees must calculate the "'lodestar,' which equals the number of hours reasonably expended multiplied by a reasonable hourly rate."  J.E.V. v. K.V., 426 N.J. Super. 475, 493-94 (App. Div. 2012) (quoting Yueh v. Yueh, 329 N.J. Super. 447, 464 (App. Div. 2000)).

"It does not follow that the amount of time actually expended is the amount of time reasonably expended."  Rendine v. Pantzer, 141 N.J. 292, 335 (1995) (citation omitted).  Therefore, when calculating the lodestar, a trial court may exclude any "excessive, redundant, or otherwise unnecessary" hours spent on the case.  Ibid.

Here, we are satisfied the firm's certifications in support of its motions did not adequately address the factors under RPC 1.5(a). For example, the firm included one paragraph in each certification that generally explained the nature of the work performed and, in some cases, noted the results obtained, e.g., a final judgment of divorce. The certifications did not inform the court of the outcome of every motion filed. Moreover, the certifications did not address the fee customarily charged in the locality for similar legal services or offer any information regarding the experience, reputation and ability of the lawyer or lawyers who performed the services.

Furthermore, although the certifications set forth the total amount of money billed and the total number of hours expended on each case, the firm did not explain why the amount of time expended was reasonable and necessary given, for instance, the level of complexity of the issues presented. Cf. Gruhin, 338 N.J. Super. at 280 (finding that the petitioner's certification "assert[ed] that all of the services performed were both reasonable and necessary in representing [the] defendant in the litigation and complying with his instructions"). Because the firm failed to establish the reasonableness of the fees requested, we are persuaded the judges properly denied its requests for judgments against its former clients for unpaid fees. See id. at 281 (holding that even when an attorney-petitioner's motion for summary judgment on an

31

unpaid fee claim is unopposed, the petitioner must still "meet a prima face test of fairness and reasonableness").

Similarly, we cannot conclude the judges erred in denying the firm the alternate relief it requested in its motions, i.e., to enforce the binding arbitration provision in the firm's RA.

As we have discussed, "[a] retainer agreement may not provide for . . . the unreasonable waiver of the clients' rights." Cohen, 146 N.J. at 156. When "construing an arbitration provision of a contract," including one contained in an RA, a de novo standard of review is applicable and "no special deference" is owed to the trial courts' interpretation. Atalese, 219 N.J. at 445-46.

"The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." Id. at 440. "The FAA requires courts to 'place arbitration agreements on equal footing with other contracts and enforce them according to their terms.'" Id. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). "'[A] state cannot subject an arbitration agreement to more burdensome requirements than' other contractual provisions." Ibid. (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)). That said, "the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an

arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Ibid. (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid. "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [his or] her claims and defenses litigated in court." Ibid. (quoting NAACP of Camden Cnty. E., 421 N.J. Super. at 425). "But an average member of the public may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Ibid.

"An arbitration clause, like any contractual clause providing for the waiver of a constitutional or statutory right, must state its purpose clearly and unambiguously." Id. at 435. "In choosing arbitration, consumers must have a basic understanding that they are giving up their right to seek relief in a judicial forum." Ibid. Moreover, "the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum."

Id. at 445. "[C]ourts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Id. at 442-43 (quoting NAACP of Camden Cnty. E., 421 N.J. Super. at 425).

In Atalese, the Court held that an arbitration provision in a consumer contract that "made no mention that [the] plaintiff waived her right to seek relief in court" was unenforceable. Id. at 435-36. "[T]he clause, at least in some general and sufficiently broad way, must explain that the [consumer] is giving up [the] right to bring [his or] her claims in court or have a jury resolve the dispute." Id. at 447. Cf. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 138 (2020) (holding that an arbitration provision in an employment contract complied with Atalese in that it "makes clear that the contemplated arbitration would be very different from a court proceeding" and evidenced a "meeting of the minds" as to the employee's "waiver of her right to pursue her age discrimination cause of action . . . before a judge or a jury").

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. "Arbitration clauses . . . will pass muster when phrased in plain language that is understandable to the reasonable consumer." Ibid. Our courts have upheld an arbitration provision that it found to be "sufficiently clear, unambiguously worded,

34

satisfactorily distinguished from the other [a]greement terms, and drawn in suitably broad language to provide a consumer with reasonable notice of the requirement to arbitrate."  Ibid. (quoting Curtis v. Cellco P'ship, 413 N.J. Super. 26, 33 (App. Div. 2010)).  By contrast, an arbitration provision that lacks clear and understandable plain language and "does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law" is unenforceable.  Id. at 446.

"A consumer cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that [he or] she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution."  Kernahan, 236 N.J. at 322.  In Kernahan, cited by the judge who presided over the motions in Oshidar and Heisler, the Court held that an arbitration provision in a consumer contract was unenforceable because "[t]he provision's language [was] debatable, confusing and contradictory – and, in part, misleading" and thus "fail[ed] to support a finding of mutuality of assent to form an agreement to arbitrate."  Id. at 308.  It concluded that "[t]he small typeface, confusing sentence order, and misleading caption exacerbate[d] the lack of clarity in expression" and found it "unreasonable to expect a lay consumer to parse through the contents of this small-font provision to unravel its material discrepancies."  Id. at 326.  "Because the

contract contain[ed] material discrepancies that call into question the essential terms of the purported agreement to arbitrate," the Court held that "mutual assent [was] lacking," which rendered the agreement unenforceable. Id. at 327.

Here, the firm contends that the waiver language contained within Paragraph Seventeen is clear and unambiguous, and complies with Atalese. In support of this argument, it cites the following sentence from Paragraph Seventeen: "Signing of this Agreement will be deemed your consent to the method of alternative dispute resolution set forth in this Section, and constitutes a waiver on your part and on the part of the firm to have such dispute(s) resolved by a court." Although that sentence does address a waiver of rights, we are convinced Paragraph Seventeen, when read in its entirety, contains vague, confusing and misleading language which fails to satisfy the requirements of Atalese and Kernahan.

While the first sentence of Paragraph Seventeen requires that any disputes between the client and the firm be submitted to binding arbitration, nothing in Paragraph Seventeen or anywhere else in the RA details for the client's benefit "what arbitration is" or "how arbitration is different from a proceeding in a court of law" as is required by Atalese, 219 N.J. at 446. Furthermore, the second sentence of Paragraph Seventeen requires that the

client initiate fee arbitration pursuant to <u>Rule</u> 1:20A.  Such a mandate violates both the wording and intent of that <u>Rule</u>, as evidenced by its plain language, and case law interpreting it.  Indeed, <u>Rule</u> 1:20A-6 provides, in relevant part:

> No lawsuit to recover a fee may be filed until the expiration of the 30[-]day period herein giving Pre-Action Notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action .  . . . The notice shall specifically advise the client of the right to request fee arbitration and that the client should immediately call the secretary to request the appropriate forms; the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration.

"The procedure for arbitration of attorney's fees" outlined in <u>Rules</u> 1:20A-1 to -6 was implemented to "promot[e] . . . public confidence in the bar and the judicial system."  <u>Saffer v. Willoughby</u>, 143 N.J. 256, 263 (1996). "When a client requests fee arbitration, participation by the attorney is mandatory."  <u>Id.</u> at 264; <u>see also</u> <u>R.</u> 1:20A-3(a)(1) ("A fee dispute shall be arbitrated only on the written request of a client or a third party defined by <u>Rule</u> 1:20A-2.").  Also, "[b]efore an attorney can file suit against a client to recover a fee, the attorney must notify the client of the availability of fee arbitration" by sending the client a PAN.  <u>Saffer</u>, 143 N.J. at 264 (citing <u>R.</u> 1:20A-6).

Thus, the plain language of Rule 1:20A-6 makes clear that it is the client who has the right to initiate fee arbitration proceedings conducted under Rule 1:20A.  Stated differently, "[w]hether or not a fee dispute will be arbitrated" pursuant to Rule 1:20A "is a matter within the exclusive control of the client" and "[t]he lawyer may not unilaterally invoke the binding arbitration technique of this rule."  Pressler & Verniero, cmt. 1 on R. 1:20A-6.  Therefore, the language in Paragraph Seventeen of the firm's RA, mandating that its clients initiate fee arbitration pursuant to Rule 1:20A-6, is contrary to the Rule itself, and is unenforceable.

Paragraph Seventeen also contains confusing language to the extent it refers to an alternative forum for binding arbitration should the client fail to invoke the procedures set forth in Rule 1:20A, or if the Fee Committee declines jurisdiction.  Again, without explaining the rules associated with this alternative forum or how it differs from a court proceeding, Paragraph Seventeen states that "you [the client] or the firm may submit the dispute to binding arbitration governed by the New Jersey Uniform Arbitration Act, N.J.S.A. 2A:24-1 et seq."

"[A]lthough the attorney's retainer agreement may contain a provision for arbitration of fees under general arbitration law and practice," as is the case in Paragraph Seventeen, "it will be enforceable only if it clearly states that[:

(1)] the client . . . has an absolute right to fee arbitration under [Rule 1:20A;] and [(2)] explains all the consequences of an election to arbitrate." Pressler & Verniero, cmt. 1 on R. 1:20A; see Kamaratos v. Palias, 360 N.J. Super. 76, 86-87 (App. Div. 2003) (explaining that "an enforceable agreement should contain a clear statement that a client has an absolute right to proceed under R. 1:20A" and finding it inappropriate "to hold a client to the limited appealability of a commercial arbitration award, N.J.S.A. 2A:24-8, and a waiver of the right to a jury trial, without a clearer statement that the client understands those sequelae of an agreement to arbitrate.").

Here, the RA satisfies neither of the two requirements. First, nothing is mentioned about the client's "right" to Rule 1:20A fee arbitration; instead, Paragraph Seventeen portrays it as mandatory, thereby misleading the client. Second, as noted, the RA fails to "explain[] all the consequences of an election to arbitrate." Pressler & Verniero, cmt. 1 on R. 1:20A. Citing the New Jersey Uniform Arbitration Act in the RA is not a substitute for "clearly stat[ing] the consequences of an agreement to arbitrate disputes over legal fees" because "[t]he potential effect of an agreement to arbitrate must be clear to the client to be binding upon him [or her]." Kamaratos, 360 N.J. Super. at 87.

Moreover, the waiver provision in the last sentence of Paragraph Seventeen is confusing and misleading. Indeed, it requires the client to

39

consent to a singular "method of alternative dispute resolution set forth in this Section," despite describing two methods of alternative dispute resolution governed by different rules without explaining what either entails, namely: (1) fee arbitration before the District Fee Committee pursuant to Rule 1:20A; or, alternatively, (2) binding fee arbitration governed by the New Jersey Uniform Arbitration Act.

Additionally, Paragraph Seventeen contradicts language appearing in Paragraph Fifteen, Attorney Withdrawal, which states, in relevant part: "If it becomes necessary to bring a lawsuit for collection of the amounts due us under this Agreement, you will also be responsible for our court costs and reasonable attorney's fees." Plainly stated, Paragraph Fifteen contemplates a collections action if a fee dispute arises, while Paragraph Seventeen requires the client and the firm to waive their rights to have fee disputes resolved by a court. We are satisfied this "material discrepanc[y]" between Paragraph Fifteen and Paragraph Seventeen "call[s] into question the essential terms of the purported agreement to arbitrate" and thus "fail[s] to support a finding of mutuality of assent." Kernahan, 236 N.J. at 308, 327.

Adding to the confusion, attached to the RA in those matters that are not post-judgment-related (i.e., all matters but Prevete, Oshidar, and Heisler) is a document entitled "DIVORCE – DISPUTE RESOLUTION ALTERNATIVE

TO CONVENTIONAL LITIGATION," which discusses arbitration as an alternative to a trial. That document explains that, in the divorce context, arbitration is only binding if the parties so agree and the judge will "make the final determination."

The ordinary client may not be aware that there are two types of arbitration: binding (as contemplated in Paragraph Seventeen) and non-binding (as an option in the divorce matter itself). While the court has the final say in the divorce context, the same would not be true in the context of an arbitrated fee dispute. But the wording of the RA fails to support the conclusion that this distinction was presented to the firm's clients in clear and understandable terms.

Given the confusing, contradictory and improper language included in Paragraph Seventeen, we are convinced the judges did not err in declining to compel the firm's former clients to submit to binding arbitration. We hasten to add, however, that although Paragraph Seventeen of the RA is unenforceable, the balance of the RA is not rendered a nullity. Thus, striking Paragraph Seventeen's binding arbitration provision does not "defeat[] the primary purpose of the contract," Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33 (1992), i.e., the firm's provision of legal representation to the client in exchange for payment of reasonable fees and costs.

In sum, we perceive no basis to disturb the challenged orders denying the firm's enforcement motions, nor are we persuaded there is any reason to upset the orders denying the firm's reconsideration motions.[4]

To the extent we have not addressed any remaining arguments presented by the firm, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Although the firm included the trial courts' orders denying its motions for reconsideration in its notices of appeal, it failed to address in its briefs why the trial courts erred in denying its reconsideration motions. Therefore, the firm's appeals of the trial courts' orders denying reconsideration are deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, cmt. 5 on R. 2:6-2.

A-2551-18