Reversed and remanded. We do not retain jurisdiction.

799 A.2d 672

MANDELBAUM, SALSBURG, GOLD, LAZRIS, DISCENZA & STEIN-BERG, P.C., PLAINTIFF–APPELLANT, v. GENERAL INSUR-ANCE COMPANY OF AMERICA, ASSIGNEE OF CRIS–TEC ASSOCIATES, INC., DEFENDANT–RESPONDENT,CRIS–TEC ASSOCIATES, INC., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 29, 2002—Decided June 19, 2002.

Before Judges PRESSLER, CIANCIA and PAYNE.

*Avrom J. Gold* argued the cause for appellant (*Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C.*, attorneys; *Mr. Gold*, of counsel and, with *Ricki Anne Sokol*, on the brief).

*Michael S. Meisel* argued the cause for respondent (*Cole, Schotz, Meisel, Forman & Leonard*, attorneys; *Mr. Meisel* of counsel and, with *James T. Kim*, on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

The law firm of Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C. (plaintiff or Mandelbaum) appeals from the dismissal of its suit for attorney's fees against General Insurance Company of America (General) and its assignor, Cris–Tec Associates, Inc. (Cris–Tec). The suit was dismissed because plaintiff failed to give General pre-action notice as required by *R.* 1:20A–6. As explained below, Cris–Tec is apparently not a viable entity, and plaintiff asserts it was unable to obtain service on it as a result. No appearance has ever been entered on Cris–Tec's behalf. The dismissal of plaintiff's suit was a consequence of a motion brought by General.

On appeal Mandelbaum contends it had no obligation to provide General with notice under *R.* 1:20A–6 because General was not its client, that it properly asserted a claim against a fund in court, and that principles of equity and *quantum meruit* require plaintiff's fees to be paid. The trial court never reached any issues other than the applicability of *R.* 1:20A–6. Nor do we. On the facts presented, we are satisfied that plaintiff owed General notice under the Rule, and failure to give such notice precluded the initiation of this litigation.

This matter has a long and detailed history, but only a relatively brief summary is necessary for present purposes. Cris–Tec was a construction firm that entered into a construction contract with a public entity (agency). Cris–Tec was bonded by General, its surety. The relationship between Cris–Tec and the agency eventually deteriorated into litigation. In April 1991 the agency sued Cris–Tec for breach of contract. Cris–Tec counterclaimed for monies owed and to compel arbitration. In July 1991 Cris–Tec assigned to General "all monies earned and to be earned by the Assignor, including all contract balances and retainages and any interest thereon, arising out of, and/or relating to, the performance by the Assignor of a project and/or contract . . ." with the agency. In August 1991 Mandelbaum was substituted in as attorneys for Cris–Tec in the litigation. A bench trial ensued, and in October 1992 a decision was rendered dismissing the agency's complaint and granting Cris–Tec's demand for arbitration. Years later, in 1997, a substantial arbitration award was entered in favor of Cris–Tec. At some point, the matter was removed to Federal District Court at the behest of the Internal Revenue Service. In that forum General successfully moved for confirmation of the arbitration award. The bulk of the money went to General as assignee of Cris–Tec, with a lesser sum set aside for specific creditors. Mandelbaum apparently attempted to assert a claim for fees in the Federal District Court, but was unsuccessful for reasons that are not entirely clear but which were apparently jurisdictional or procedural and not based upon the merits of its claim. The Federal District Court, in its order of April 20, 1998,

remanded the matter to the Superior Court of New Jersey. In October 1998 Mandelbaum again attempted to intervene for the purpose of making a claim for counsel fees, but its motion was denied.

It also appears that in 1995 Mandelbaum initiated suit against Cris–Tec in an effort to recover unpaid fees. Although not documented in the record, General asserts that that action was dismissed in 1997 for lack of prosecution.

The present litigation was initiated in 1999 when Mandelbaum filed a complaint against General as assignee of Cris–Tec and against Cris–Tec itself. As previously indicated, Cris–Tec was apparently defunct or in liquidation and allegedly could not be served. The Mandelbaum complaint did not allege the giving of notice as required by *R.* 1:20A–6 and, indeed, it is undisputed that no notice was given to General under the Rule.

Mandelbaum's complaint, in part, contains the following assertions:

Upon information and belief, General was fully aware of, had no objection to, and, in fact, approved Mandelbaum's appearance and role in the ongoing handling of the Superior Court action on behalf of CRIS–TEC.

. . . .

Mandelbaum actively supervised and primarily handled CRIS–TEC's motion to dismiss ... [agency's] complaint and to compel arbitration and ... [agency's] cross-motion to stay arbitration in a plenary hearing in the matter in the Superior Court Action on behalf of CRIS–TEC, with the full knowledge and approval of General.. .

. . . .

In consideration of the legal services performed on behalf of CRIS–TEC, for its benefit and for the benefit of General as Assignee ... [fees were billed to Cris–Tec].

. . . .

At all time relevant hereto, General acquiesced in and authorized Mandelbaum's participation in the legal proceedings which created the fund.

By accepting the assignment of CRIS–TEC's right to any money obtained from ... [agency], General became subrogated to CRIS–TEC's rights against ... [agency], and ultimately to the fund resulting from the successful defense of the Superior Court Action and prosecution of the arbitration. The fund that was created as a result of Mandelbaum's efforts has directly benefitted General pursuant to the Assignment made to it by CRIS–TEC, and Mandelbaum is

therefore entitled to counsel fees for services rendered in making the fund available to General as subrogee of CRIS–TEC.

In exercising its subrogation rights, General is required to pay its *pro rata* share of counsel fees owed to Mandelbaum for establishing the fund which will enure to General's benefit as surety.

. . . .

Mandelbaum expected to be compensated for its services rendered in the Superior Court Action and the CRIS–TEC ... arbitration from either of these defendants, and to that extent, and in the event that the court finds that there was no express agreement that General would pay for these services, Mandelbaum sues for the reasonable value of its services rendered under the doctrine of *quantum meruit.*

Mandelbaum now claims that General was never its client and, therefore, the stricture of *R.* 1:20A–6 that "[n]o lawsuit to recover a fee may be filed until expiration of the 30 day period herein giving Pre–Action Notice to a client ..." is inapplicable. In our view, a persuasive argument exists for finding that General was, in fact, a "client" of Mandelbaum within the meaning of *R.* 1:20A–6. Prior to Mandelbaum having any relationship with Cris–Tec, that company assigned to General all rights in any monies it was entitled to from the contract with the agency. Thereafter, General was the true party in interest in the litigation and the ensuing arbitration. General stood in the shoes of Cris–Tec, and Mandelbaum owed its efforts and duty to General, even absent a specific agreement so stating. *Compare Petrillo v. Bachenberg*, 139 *N.J.* 472, 482–484, 655 *A.*2d 1354 (1995) (holding attorney has duty to non-client when attorney knows non-client reasonably relies on attorney's conduct and representations). It was General that would gain or lose by virtue of Mandelbaum's efforts in the litigation and arbitration, even though the extent of those efforts is now in issue.

General asserts on appeal that it, in fact, paid Mandelbaum for some legal services. At oral argument, Mandelbaum took the position that those payments were only for work performed in relation to the arbitration proceedings, and did not represent fees paid for the trial litigation. Nevertheless, it appears some money was paid to Mandelbaum directly by General for legal services. While there may have been no written lawyer/client retainer

agreement between Mandelbaum and General, their dealings certainly had many of the trappings of such a relationship. Indeed, Mandelbaum's claim for payment under the principle of *quantum meruit*, if valid, virtually compels the conclusion that a lawyer/client relationship existed. *Starkey v. Estate of Nicolaysen*, 172 *N.J.* 60, 68, 796 *A.*2d 238 (2002).

We need not, however, decide whether General was a client of Mandelbaum as such. In our view, the Rule is not so limited. The jurisdiction of a District Fee Arbitration Committee extends to "disputes in which a person other than the client is legally bound to pay for the legal services." *R.* 1:20A–2(a). For purposes of interpreting and applying *R.* 1:20A–6, it is irrelevant that General denies such an obligation. The jurisdiction of the fee committee extends to Mandelbaum's claim against General, even if General is not considered a client per se. It cannot be argued persuasively, as Mandelbaum attempts to do, that although the fee committee has jurisdiction to arbitrate a claim between an attorney and a person other than a client who is allegedly obligated to pay legal fees, notice need not be given to that other person. It is true that *R.* 1:20A–6 only references "[n]otice to a client," but in context that phrase must be understood as also encompassing others legally bound to pay for legal services. It would be anomalous to give notice of arbitration to a client but not to another person allegedly liable to pay fees who is given the right to participate in fee arbitration and can only do so on notice. The logic and spirit of the fee arbitration rules allow no other construction.

Accordingly, the merits of Mandelbaum's claim against General and General's defenses to those claims are irrelevant to disposition of this appeal. So too, whether the arbitration monies constitute a fund in court is not determinative. And, of course, Mandelbaum's claim to an attorney's lien pursuant to *N.J.S.A.* 2A:13–5 does not preempt the need for compliance with *R.* 1:20A–6. *Martin v. Martin*, 335 *N.J.Super.* 212, 224, 762 *A.*2d 246 (App.Div.2000); *Mateo v. Mateo*, 281 *N.J.Super.* 73, 656 *A.*2d 846 (App.Div.1995);

*Rosenfeld v. Rosenfeld,* 239 *N.J.Super.* 77, 570 *A.*2d 1026 (Ch.Div. 1989).

Mandelbaum's failure to comply with *R.* 1:20A–6 required dismissal of its complaint.

Affirmed.