**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1090-25

LOWENSTEIN SANDLER, LLP,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

HARMONY FOUNDATION OF NEW
JERSEY, INC., ALLEN WILEN, in his
capacity as Receiver of HARMONY
FOUNDATION OF NEW JERSEY, INC.,
and SECAUCUS INVESTORS, LLC,

     Defendants,

and

TRIF & MODUGNO LLC, and
LOUIS A. MODUGNO, ESQ.,

     Defendants-Appellants/
     Cross-Respondents.

_____

HARMONY FOUNDATION OF NEW
JERSEY, INC., by and through ALLEN
WILEN, Court Appointed Receiver,

     Plaintiff,

v.

LOWENSTEIN SANDLER, LLP, PETER
SLOCUM, ESQ., CHRISTOPHER
PORRINO, ESQ., CYRULNIK
FATTARUSO, LLP, JASON CYRULNIK,
ESQ., JESHAYAHU BRODCHANDEL,
YEHUDA MEER, and MARINA KARAVAS,

 Defendants.

_____

   Argued June 2, 2026 – Decided June 29, 2026

   Before Judges Gilson, Firko, and Perez Friscia.

   On appeal from an interlocutory order of the Superior
   Court of New Jersey, Law Division, Essex County,
   Docket Nos. L-7647-24.

   Greg Trif argued the cause for appellants/cross-
   respondents (Trif & Modugno LLC, attorneys; Greg
   Trif, of counsel and on the briefs).

   Kevin H. Marino argued the cause for
   respondent/cross-appellant (Marino Tortorella &
   Boyle, PC, attorneys; Kevin H. Marino, John D.
   Tortorella and Erez J. Davy, on the briefs).

PER CURIAM

  On leave granted, defendants Trif & Modugno, LLC and Louis A.

Modugno, Esq. (collectively T&M) appeal from the October 30, 2025 trial court

order denying their motion to dismiss plaintiff Lowenstein Sandler, LLP's

(Lowenstein) tortious interference claims against them for failing to file an

affidavit of merit (AOM), N.J.S.A. 2A:53A-27. Lowenstein cross-appeals from the court's determination that its tortious interference claims fall within the scope of the affidavit of merit statutes (AMS), N.J.S.A. 2A:53A-26 to -29. Having reviewed the record, parties' arguments, and applicable law, we affirm.

## I.

We summarize the salient facts necessary to address the issues before us and incorporate by reference the facts detailed in our prior opinion. See Secaucus Invs., LLC v. Harmony Found. of N.J., Inc., No. A-2396-21 (App. Div. May 29, 2024) (slip op. at 1-22). Further, we review the facts asserted in Lowenstein's complaint, at the motion to dismiss stage, as true and accord "the benefit of every reasonable inference." Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024).

In 2016, Harmony Foundation of New Jersey, Inc. (Harmony) entered into a retainer agreement with Lowenstein for representation related to its medical marijuana business in New Jersey. Harmony originally operated as a non-profit medical marijuana company in accordance with the New Jersey Compassionate Use Medical Marijuana Act (CUMMA), N.J.S.A. 24:6I-1 to -16 (2010), superseded by statute, L. 2019, c. 153, and as an alternative treatment center

(ATC). Prior to retaining Lowenstein, Harmony had entered loan and operating agreements with Secaucus Investors, LLC (Secaucus).

In 2019, the Jake Honig Compassionate Use Medical Cannabis Act (Jake Honig Act), N.J.S.A. 24:6I-1 to -29,[1] was enacted. The Jake Honig Act authorized already-existing non-profit medical marijuana entities operating as ATCs to apply to sell or transfer their existing permits to established for-profit entities subject to regulatory approval. Lowenstein assisted Harmony in filing an application. In conforming with the transfer requirements, Harmony formed a for-profit limited liability company—Harmony Holdings of New Jersey, LLC (Harmony Holdings). Harmony planned to transfer all its assets and its permit to Harmony Holdings, which would assume Harmony's obligations and liabilities in addition to issuing membership interests to Harmony.

On September 7, 2020, Secaucus filed with the New Jersey Department of Health (DOH) a formal objection to Harmony's application, arguing that pursuant to their loan agreements Secaucus maintained an ownership interest in Harmony. Secaucus asserted it was the sole source of Harmony's capital and the parties had agreed Secaucus would acquire the ownership of any future for-profit

---

[1] In July 2019, the Legislature expanded CUMMA and amended the title of the act, now known as "Jake Honig Compassionate Use Medical Cannabis Act." L. 2019, c. 153.

A-1090-25

successor company. Harmony refuted Secaucus' objection, maintaining their integrated contracts did not support Secaucus' position. On September 29, 2020, the DOH issued a final agency decision (FAD) approving Harmony's transfer application.

A few days before the FAD was issued, Secaucus filed a verified complaint and order to show cause in the Chancery Part alleging breach of contract claims. Secaucus maintained "it had been the source of [Harmony's] funding, through a line of credit security agreement . . . and an associated line of credit promissory note." Secaucus Invs., LLC, slip op. at 3. Secaucus claimed, in part, an "overall interest of [fifty-five percent] of the [b]usiness." Lowenstein represented Harmony and its president, Jeshayahu Brodchandel, in the action.

After Harmony and Brodchandel successfully moved to compel arbitration, the selected arbitrator held a hearing in 2021. On October 15, 2021, the arbitrator rendered a final award, finding that Harmony and Secaucus should receive "the economic rewards of an enterprise to which each ha[d] substantially contributed" because it "best effectuate[d] their true intention and achieve[d] the fairest, most equitable result, especially given the equity split agreed upon at the outset." Id. at 10. The arbitrator enforced Secaucus' agreements with Harmony.

5

The arbitrator "made a determination of the equity interests in Harmony Holdings, finding Secaucus was entitled to a [fifty-five percent] equity interest in Harmony Holdings" and "Harmony Foundation [was] entitled to the remaining [forty-five percent]." Ibid. After Secaucus moved to confirm the arbitration award, on February 18, 2022, the chancery court granted Secaucus' motion and denied Harmony's motion to vacate the award. Ibid. Harmony thereafter appealed the chancery court's decision.

On January 31, 2023, Lowenstein moved to withdraw as counsel, agreeing to still complete Harmony's appeal, which the chancery court granted. While the appeal was pending, Harmony's court-appointed receiver, Allen Wilen, facilitated a settlement between Secaucus, Harmony, Brodchandel, and Marina Karavas. Thereafter, based on the receiver's instructions, Lowenstein withdrew as appellate counsel. On May 29, 2024, we rendered our decision on the appeal in Secaucus Invs., LLC, concluding that the completed sale of Harmony's equity interest in Harmony Holdings to a third party, Illicit Cannabis New Jersey LLC (Illicit), "rendered moot the part of the appeal challenging the court's confirmation of the arbitrator's award determining the equity interests in Harmony Holdings" and affirming the remaining aspects of the chancery court's order. Id. at 2.

A-1090-25

On November 1, 2024, Lowenstein filed this action seeking to collect $766,276.13 in unpaid legal fees for services rendered to Harmony. Lowenstein's four-count complaint alleged claims for: breach of contract against Harmony and Wilen (count one), unjust enrichment against Harmony and Wilen (count two), tortious interference against T&M (count three), and tortious interference against T&M, Secaucus, and Wilen (count four).

In November 2024, T&M moved to dismiss Lowenstein's tortious interference claims for failure to state a claim upon which relief can be granted in lieu of filing an answer. Thereafter, Harmony and Wilen also separately moved to dismiss Lowenstein's claims, partly based on Lowenstein's failure to serve a pre-action fee arbitration notice. On December 10, 2024, Lowenstein opposed the motions and cross-moved to amend its complaint, providing a proposed first amended complaint (FAC).

On January 16, 2025, the court issued an order granting Harmony's and Wilen's motions to dismiss Lowenstein's claims under counts one and two without prejudice. Additionally, the court dismissed count four without prejudice as to Wilen only. The court determined dismissal was required because Lowenstein had failed to serve Harmony with a "[p]re-action [n]otice as contemplated by [Rule] 1:20A-6." The court also granted Lowenstein's cross-

A-1090-25

motion to file an amended complaint but did not include a date for the FAC to be filed by. The court's order specifically noted that pursuant to Rule 1:20A-6, reinstatement of the claims was subject to "the expiration of [thirty] days from . . . service" of the notice on Harmony if it did not elect fee arbitration during that period.

On or about January 23, 2025, Lowenstein served Harmony with the required fee arbitration notice and Harmony thereafter elected to proceed with fee arbitration. On February 25, 2025, after reviewing the matter, the fee arbitration committee declined jurisdiction pursuant to Rule 1:20A-2(b) and forwarded its decision to Lowenstein and Harmony. It is unclear from the record exactly when Lowenstein and Harmony received the fee arbitration committee's decision.

On February 25, 2025, T&M and Secaucus filed an answer to Lowenstein's proposed, but unfiled, FAC. On March 10, 2025, Lowenstein again moved to amend its complaint, seeking to include facts regarding its compliance with the pre-action notice requirements. Lowenstein labeled its amended complaint as the FAC even though it contained additional factual information. T&M and Secaucus initially opposed but then withdrew their opposition to Lowenstein's motion to amend. On June 11, 2025, the court

8

granted Lowenstein's unopposed motion to file the FAC, which was filed one week later.

On June 26, 2025, T&M moved to dismiss Lowenstein's complaint for failing to file a timely AOM pursuant to the AMS. Lowenstein opposed the motion, arguing its tortious interference claims did not fall under the AMS because the attorneys' fees sought were not for property damages, and a breach of a professional standard of care was not alleged. Lowenstein maintained that while counts three and four aver T&M acted with malice in its professional capacity to tortiously interfere with Lowenstein's receipt of attorneys' fees from Harmony, no professional negligence claim was asserted.

On October 30, 2025, the court issued an order denying T&M's motion to dismiss. The court first determined Lowenstein's claims were subject to the AMS because Modugno was a "licensed person" and Lowenstein's money damages qualified as "property damages." In determining Lowenstein's claims sounded in professional negligence, the court reviewed the underlying factual assertions and reasoned that they implicated applicable legal standards of care and deviations therefrom. The court concluded that Lowenstein had to prove its claims against T&M through expert testimony given the allegations intricately involved professional standards. The court further explained its determination

A-1090-25

was "not predicated on the label assigned to the claim" but instead based on a detailed review of the nature of the "legal inquiry" giving rise to the action, which "result[ed] entirely from [T&M's] representation of Secaucus in arbitration, litigation, regulatory[,] and related proceedings."

The court then denied T&M's motion to dismiss Lowenstein's tortious interference claims for failing to timely file an AOM because T&M's filed answer was "a legal nullity." The court explained that while it had granted Lowenstein's cross-motion to file an FAC, Lowenstein's claims against Harmony and Wilen were simultaneously dismissed because the required pre-action notice of the right to seek fee arbitration had not been served. The court reasoned "that Lowenstein could [not] seek reinstatement of such claims" until it was determined that "the fee arbitration [would] not proceed." Because Lowenstein could not file its FAC, the court found T&M had not filed a valid answer and the time to provide an AOM had not run.

On November 10, 2025, T&M and Secaucus filed an answer and counterclaims. T&M thereafter moved for leave to appeal from the court's October 30, 2025 order, which we granted. On December 10, 2025, Lowenstein filed a notice of cross-appeal.

10                                                          A-1090-25

On appeal, T&M contends the court: (1) erred in concluding the T&M's "answer was a nullity[,] thereby effectively extending Lowenstein's time to comply with the [AMS]"; (2) correctly held that the AMS applies to Lowenstein's claims against T&M; and (3) "incorrectly failed to dismiss Lowenstein's claims" with prejudice against T&M. Lowenstein argues in its cross-appeal that the court erred in finding: (1) its tortious interference claims required an AOM; (2) monetary damages are "property damages" under the AMS; (3) and the common knowledge exception does not apply.

II.

The "decision granting or denying a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e) is reviewed de novo." Maia v. IEW Constr. Grp., 257 N.J. 330, 341 (2024); Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016) (recognizing our de novo standard of review on a trial court's dismissal under the AMS). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023) (alteration in original) (quoting Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)).

A-1090-25

We first address T&M's assertion that the court erred in denying its motion to dismiss Lowenstein's tortious interference claims for failing to file an AOM. T&M contends it filed a valid and timely answer on February 25, 2025 to Lowenstein's FAC, and the court's finding otherwise was erroneous. Referencing N.J.S.A. 2A:53A-27's 120-day AOM filing period, T&M argues that dismissal was warranted because Lowenstein failed to timely file an AOM after T&M filed an answer. T&M posits that it properly moved for dismissal in June 2025, after the expiration of the 120-day deadline.

A review of the fee arbitration court rules and precedential authority is relevant to our de novo consideration of T&M's motion to dismiss Lowenstein's tortious interference claims for failing to file an AOM. The Supreme Court has long recognized that "[b]efore an attorney can file suit against a client to recover a fee, the attorney must notify the client of the availability of fee arbitration." Saffer v. Willoughby, 143 N.J. 256, 264 (1996). "Rules 1:20A-1 to -6 govern the fee arbitration process." Id. at 263. "A fee arbitration determination is final and binding upon the parties." R. 1:20A-2.

Rule 1:20A-6 states that "[n]o lawsuit to recover a fee may be filed until the expiration of the [thirty-]day period herein giving [p]re-[a]ction [n]otice to

12

a client . . . ." (emphasis added).  The "[p]re-[a]ction [n]otice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client."  R. 1:20A-6.  "The jurisdiction of a District Fee Arbitration Committee extends to 'disputes in which a person other than the client is legally bound to pay for the legal services.'"  Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C. v. Gen. Ins. Co. of Am., 352 N.J. Super. 118, 123 (App. Div. 2002) (quoting R. 1:20A-2(a)).

A client's "filing of a [f]ee [a]rbitration [r]equest [f]orm with the secretary shall constitute a stay of all pending court actions for the collection of the fee" and "[t]he secretary shall notify the appropriate court clerk when any pending proceeding is stayed by this rule."  R. 1:20A-3(a)(1).  (emphasis added).  Generally, "the failure to give [Rule 1:20A-6] notice preclude[s] the initiation of . . . litigation."  Mandelbaum, 352 N.J. Super. at 120.

In the present case, the court correctly ordered Lowenstein to provide Harmony and Wilen with a pre-action fee arbitration notice.  While the court did not stay the matter in its order, in accordance with Rule 1:20A-6, Lowenstein was nevertheless precluded from proceeding in prosecuting the action and filing the FAC until either the expiration of thirty days afforded to Harmony to request fee arbitration or the conclusion of the proceedings.  Because under Rule 1:20A-

13

a fee arbitration committee's decision is binding on Lowenstein and Harmony, the remaining parties to the action had to await resolution of the fee arbitration proceeding. All parties were bound by the applicable governing rules, as our Supreme Court has elucidated—"parties are presumed to know the law and are obliged to follow it." Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 424 (2010).

Additionally, it is undisputed that Harmony elected to proceed with fee arbitration on February 24, 2025. The fee arbitration committee declined jurisdiction on February 25, 2025, and sent notices of its decision. T&M filed its answer the same day, before Lowenstein filed its FAC. It is unclear exactly when Lowenstein and Harmony received notice of the fee arbitration committee's decision. Under the specific facts presented, T&M's answer was prematurely filed because Lowenstein, at the earliest, had only received the fee arbitration committee's decision the day T&M filed its answer and had not had sufficient time to file the FAC providing the fee arbitration committee's decision. Lowenstein then timely moved on March 10, 2025, to file an amended complaint with the fee arbitration disposition. For these reasons, T&M's prematurely filed answer did not constitute the triggering date under the AMS for Lowenstein to file an AOM.

A-1090-25

Moreover, we observe that T&M's filed civil case information statement with its answer responded "NO" to the question of whether the action involved professional negligence. Because neither Lowenstein's original complaint nor T&M's prematurely filed answer indicated that the matter involved professional negligence, the need for a Ferreira conference was not triggered with the court. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003). The Supreme Court in Ferreira held that trial courts are required to have "an accelerated case management conference . . . within ninety days of the service of an answer in all malpractice actions" to "ensure compliance with the . . . [AMS]." 178 N.J. at 147, 154.

At a Ferreira conference, courts are also directed to "remind the parties of their obligations under the statute and case law" if a plaintiff has not served an AOM. Id. at 155. The failure to hold a Ferreira conference alone does not serve as cause for "'tolling'" because "the conference 'was never intended . . . as an overlay on the [AMS] that would effectively extend the legislatively prescribed filing period.'" A.T. v. Cohen, 231 N.J. 337, 347-48 (2017) (quoting Paragon, 202 N.J. at 419).

The Supreme Court, however, has recognized narrow exceptions to the AOM time limitation to "temper the draconian results of an inflexible

15

application of the [AMS]." Ferreira, 178 N.J. at 151. The Court has explained "[a] complaint will not be dismissed if the plaintiff can show that he [or she] has substantially complied with the [AMS]." Ibid. Additionally, an exception to a dismissal with prejudice may apply when a court determines, after a fact-sensitive review, that "extraordinary circumstances justified a failure to comply with procedural requirements." Tischler v. Watts, 177 N.J. 243, 247 (2003); Castello, 446 N.J. Super. at 22.

In sum, we discern no reason to disturb the court's denial of T&M's motion to dismiss Lowenstein's tortious interference claims for failing to file an AOM. The court correctly determined this matter should proceed on the merits.

IV.

On the cross-appeal, Lowenstein contends that the court erred in ruling that its tortious-interference claims require an AOM. Lowenstein argues its tortious interference claims do not fall under the AMS and its claim for attorneys' fees does not constitute "property damage" requiring an AOM. Additionally, Lowenstein asserts the court failed to apply the common knowledge exception. After a de novo review of the record, we conclude that Lowenstein's allegations against T&M fall within the ambit of the AMS, requiring an AOM, and are not within the common knowledge exception.

16

The Supreme Court has "long recognized that the dual purpose of the [AMS] . . . is 'to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court.'" Moschella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 121 (2024) (quoting Ferreira, 178 N.J. at 150). "[A] plaintiff in an action against a licensed professional must 'produce an affidavit from an expert attesting to the merits of the claim.'" Id. at 113 (quoting Meehan v. Antonellis, 226 N.J. 216, 230 (2016)).

N.J.S.A. 2A:53A-27 requires:

> In any action for damages for personal injuries, wrongful death[,] or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

The Legislature has defined a "licensed person" to include "an attorney admitted to practice law in New Jersey." N.J.S.A. 2A:53A-26(c); Alan J.

17

Cornblatt, P.A. v. Barow, 153 N.J. 218, 228 (1998) (explaining the AMS applies to attorneys in legal malpractice actions for a breach of the standard of care).

The Supreme Court has explained that when considering "a tort or contract claim asserted against a professional specified in the [AMS]," the "nature of the legal inquiry" is not on "whether the claim is denominated as tort or contract," but rather "if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Couri v. Gardner, 173 N.J. 328, 340 (2002). "If 'proof of a deviation from the professional standard of care for [the] specific profession . . . is required, an [AOM] shall be mandatory for that claim, unless either the statutory, N.J.S.A. 2A:53A-28, or common knowledge exceptions apply.'" Risko v. Ciocca, 356 N.J. Super. 406, 412 (App. Div. 2003) (quoting Couri, 173 N.J. at 341). Further, "causes of action alleging intentional torts that rely on their success upon proof of a deviation from the professional standard of care applicable to the profession are subject to the [AOM] requirement." Balthazar v. Atl. City. Med. Ctr., 358 N.J. Super. 13, 27 (App. Div. 2003).

In determining whether an AOM is required, the Supreme Court has elucidated that courts should consider:

> (1) whether the action is for "damages for personal injuries, wrongful death[,] or property damage" (nature

18

of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill[,] or knowledge exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

[Couri, 173 N.J. at 334 (fourth alteration in original) (quoting N.J.S.A. 2A:53A-27).]

"A claim against an attorney for alleged malpractice is a claim for property damage within the legislative intent and plain meaning of the statute." Cornblatt v. Barow, 303 N.J. Super. 81, 86 (App. Div. 1997), rev'd on other grounds, 153 N.J. at 218. A party's failure to comply with the AMS constitutes "a failure to state a cause of action." N.J.S.A. 2A:53A-29.

"The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 567 (App. Div. 2001), aff'd o.b., 172 N.J. 182 (2002). An intentional tort claim "requiring proof of malice and not a deviation from a standard of care, . . . does not need an [AOM] . . . to support the claim." Perez v. Zagami, LLC, 443 N.J. Super. 359, 361 (App. Div. 2016).

19

To establish legal malpractice, a plaintiff must demonstrate three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney[;] (2) the breach of that duty by the defendant[;] and (3) proximate causation of the damages claimed by the plaintiff." Christakos v. Boyadjis, 262 N.J. 447, 468 (2026) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). Our Supreme Court has held that in limited circumstances, "attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys['] representations and the non-clients are not too remote from the attorneys to be entitled to protection." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 180 (2005) (alteration in original) (quoting Petrillo v. Bachenberg, 139 N.J. 472, 483-84 (1995)). Our Supreme Court recently addressed "the appropriate standard" to be applied "when an attorney owes a duty of care to a non-client." Christakos, 262 N.J. at 458.[2]

---

[2] The Court "expressly adopt[ed] the provisions of Section 51 of the Restatement (Third) of the Law Governing Lawyers . . . relied on in prior cases." Id. at 469. The pertinent provisions adopted provide:

> First, . . . a lawyer owes a duty of care "to a nonclient when and to the extent that":

In the present case, the court correctly determined that the AMS applied

to Lowenstein's FAC claims against T&M because the underlying allegations

> (a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and
>
> (b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection[.]
>
>    . . . .
>
> Second, . . . a lawyer owes a duty of care "to a nonclient when and to the extent that":
>
> > (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
> >
> > (b) such duty would not significantly impair the lawyer's performance of obligations to the client; and
> >
> > (c) the absence of such a duty would make enforcement of those obligations to the client unlikely[.]
>
> [Id. at 469-72 (alterations in original) (citing Restatement (Third) of the Law Governing Lawyers § 51(2) to (3) (Am. Law Inst. 2000)).]

A-1090-25

specifically involve T&M's legal decisions and actions in representing Secaucus. We again recognize that the parties are at the initial stage of the litigation and limited discovery has been conducted. Relevant to our de novo review, Lowenstein's tortious interference claims include allegations that T&M: deprived Lowenstein from being paid as "an unsecured creditor[] of Harmony"; "represented to the [New Jersey] Cannabis Regulatory Commission that 'Harmony [would] comply with the statutory requirements of the for-profit transfer'"; "ensured that Harmony would not pay its debts or establish the required reserve fund"; "issued a Notice of Seizure, Demand for Inventory of Collateral[,] and Marshalling of Assets, demanding that Harmony turn over all cash, funds[,] and deposits on its premises and generated in the future on a daily basis"; "with malice" "prevented Harmony from paying bills of its litigation counsel as a means of preventing Harmony from defending against Secaucus'[] hostile takeover"; and "with malice" "effectuated the sale of Harmony's assets to Illicit to interfere with Harmony's ability to pay Lowenstein for its services." As highlighted by the court, Lowenstein's claims are anchored to T&M's legal performance "in its professional capacity."

We also agree with the court that simply labeling a claim as tortious interference is not dispositive of whether an AOM is required. Lowenstein's

22

allegations against T&M bespeak of deviations from accepted standards of care, requiring an AOM. For example, Lowenstein's allegations in its FAC that T&M "deprive[d] . . . creditors" by acting on Secaucus' behalf before the court by filing applications with the "[New Jersey] Cannabis Regulatory Commission," and representing it would comply with other "statutory requirements," are not stated as specific intentional malicious acts against Lowenstein. As acknowledged in its motion to consolidate, Lowenstein "intends to prove that T&M acted with malice by, among other things, <u>deviating from accepted professional standards</u>." (Emphasis added). Lowenstein's assertions include a recitation of the legal measures T&M took on Secaucus' behalf against Harmony, implicating the requisite standard of care. Further, T&M's alleged wrongful actions are premised on its exercise of specialized legal "skill or knowledge" and purported deviations from legal standards. Thus, we conclude Lowenstein's assertions—that T&M intentionally and wrongfully committed acts while representing Secaucus that prevented Lowenstein from receiving payment for its legal fees from Harmony—fall under the AMS, requiring an AOM.

We also reject Lowenstein's contention that its damages claim for $766,276.13 in unpaid legal fees does not constitute "property damage" under

the AMS. N.J.S.A. 2A:53A-26(c) specifically includes attorneys as "licensed person[s]" subject to the AMS, and legal malpractice claims generally involve monetary damages resulting from an attorney's breach of the standard of care. A review of the plain meaning of the AMS indicates monetary loss is included as property damage. See N.J.S.A. 1:1-2 (defining the word "property" "when used in any statute" as "both real and personal property"); see also N.J.S.A. 1:1-2 (defining "personal property" to include "goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action[,] and all written instruments by which any right to, interest in, or lien or encumbrance upon, property[,] or any debt or financial obligation is created"). Here, Lowenstein is not seeking contractual damages from T&M. Thus, Lowenstein's claimed loss of attorneys' fees squarely falls within the definition of "property damage" under the AMS.

Finally, we are unconvinced by Lowenstein's argument that its allegations against T&M, which sound in professional negligence, fall within the common knowledge exception. The Supreme Court in Hubbard v. Reed explained that an AOM "need not be provided in common knowledge cases when an expert will not be called to testify 'that the care, skill[,] or knowledge . . . [of the defendant] fell outside acceptable professional or occupational standards or

24

treatment practices.'" 168 N.J. 387, 390 (2001) (second alteration in original) (quoting N.J.S.A. 2A:53A-27). The common knowledge exception applies "only when expert testimony is not required to prove a professional defendant's negligence" and occurs in "limited cases where a person of reasonable intelligence can use common knowledge to determine that there was a deviation from a standard of care." Cowley v. Virtua Health Sys., 242 N.J. 1, 8-9 (2020). As we have already concluded, Lowenstein's recited factual allegations involve T&M's legal reasons and strategies in representing Secaucus. Thus, the common knowledge exception is inapplicable because expert testimony will be required to address the applicable professional standards, duties T&M owed, and alleged deviations.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1090-25